## SARAH M. KLEIS v. TRAVELERS INSURANCE COMPANY OF HARTFORD.[1]

July 5, 1912.

Nos. 17,670—(175).

**Insurance policy—question for jury.**

Evidence in an action on an accident insurance policy considered, and *held* sufficient to sustain the ruling of the trial court in submitting to the jury the question as to whether the insured came to her death from injuries caused by the burning of a building while she was therein.

Action in the district court for Dakota county by the administratrix of the estate of John Kleis, deceased, to recover $5,000 upon an accident insurance policy. The answer denied that the death of Anna Maria Kleis was caused by the burning of a building while she was therein, or by any other cause or risk covered by such policy. The case was tried before Hodgson, J., who at the close of the evidence denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $5,320.83. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*How, Butler & Mitchell* and *Albert Schaller,* for appellant.

*James M. Millett, John D. O'Brien* and *Dillon J. O'Brien,* for respondent.

PHILIP E. BROWN, J.

This is an appeal from an order denying the defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

The action is based upon a policy of accident insurance covering the life of Anna Maria Kleis, whom we will hereafter call Mrs. Kleis, she being a married woman, and the only question involved is

[1] Reported in 136 N. W. 1101.

whether the death of the said Mrs. Kleis resulted from one of the risks insured against, viz., "the burning of a building while the insured is therein;" such being the provision of the policy, under which the right to recover is claimed. At the close of all the evidence the defendant moved the court to direct a verdict in its favor. This the court refused to do, and submitted the case to the jury on the theory that there was only one question involved, viz., whether the said Mrs. Kleis came to her death "by reason of bodily injuries caused by the burning of a building while she was therein," and in its elaboration of this theory the court made it clearly to appear that the case was to be disposed of along the lines of the doctrine established by the New York case hereinafter referred to. This instruction was not excepted to, and hence it is the law of this case. In other words, the case was submitted, without objection or exception, upon the theory that in order to justify a recovery Mrs. Kleis must have died from injuries literally caused by the burning of a building while she was therein, as distinguished from a fire in a building, the building itself not being burned, nor any part thereof; and the only question presented by the defendant's motion for a new trial, and by its assignments of error in this court, is whether there was sufficient evidence to warrant the submission of the case to the jury upon this theory.

Such being the case, we are not called upon to choose between the rule declared in Houlihan v. Preferred A. Ins. Co. 196 N. Y. 337, 89 N. E. 927, 25 L.R.A.(N.S.) 1261, where it was held that a policy insuring against injury "caused by the burning of a building while the said person is therein" did not cover a case where no portion of the building itself was burned, but only a portion of its contents, and the substantially contrary rule laid down in Wilkinson v. Ætna, 240 Ill. 205, 88 N. E. 550, 25 L.R.A.(N.S.) 1256, 130 Am. St. 269. All we are required to do in the instant case is to determine whether the evidence was sufficient to warrant the submission of the question as to whether Mrs. Kleis' injuries, which caused her death, were literally "caused by the burning of a building" while she was therein, within the strict rule propounded by the New York case.

There is no substantial conflict in the evidence. The only witness as to the origin of the fire was a Mrs. Olson, called by the defendant. According to her testimony, on October 24, 1910, about noon, she was sitting at the table in the kitchen of the Gardner Hotel, of which Mr. and Mrs. Kleis were the proprietors, when she heard a noise, and, glancing around towards the stove, she saw fire coming out around the lid of a double boiler that was on the stove. At or about the same moment Mrs. Kleis picked up a dishcloth and threw it over the boiler. Then Mrs. Olson went to her assistance, threw the dishcloth on the floor, and stamped out the fire thereon, pushed Mrs. Kleis away, seized the top part of the double boiler, which had a separate handle, and started, backing, out of the kitchen through a doorway that led into a storage room about twelve feet wide, which, by another door directly opposite the kitchen door, opened into a laundry room; the latter opening out upon an alley by a third door in a line with the other two. Mrs. Kleis held open the screen door between the kitchen and the storage room. Mrs. Olson backed through this door, and through the storage room, but on reaching the door leading into the laundry room she became frightened, thinking that the substance in the receptacle she was carrying, which she said smelt like gasolene, was about to explode, and dropped the receptacle on the floor, and ran through the outside laundry door out into the alley; but just before she ran out she looked back and saw Mrs. Kleis standing in the kitchen behind the screen door, and noticed that she was not then on fire. As she ran, a sheet of fire shot up over her head from behind. She ran out and screamed, and when she reached the sidewalk she looked back and saw Mrs. Kleis running out of the laundry door with her clothing on fire. As testified by the witness, Mrs. Kleis' "skirt was on fire and the fire was creeping upwards." The witness testified that it was about ten seconds from the time she dropped the upper part of the double boiler, with its inflammable contents, until she saw Mrs. Kleis run out with her clothing on fire. Mrs. Olson also testified that, from the weight of the upper part of the boiler, which she was trying to carry out, but dropped, she thought there was something over a pint of fluid therein.

John Illa, called by the plaintiff, was employed at the hotel at

the time of the fire, and was in the office in the front part of the hotel when he heard of the fire. He went back into the kitchen and saw that "there was a big fire." According to his testimony, "flame was coming out of the room, what they called the little storage room. It reached through the door. The door was open. It reached clean to the ceiling, and everything else was in flames out there in the storage room as far as I could see." The witness then got some flour, and, with a milk pan, threw it on the flames, and principally on the side walls and ceiling of the storage room, which were of wood, and where most of the fire seemed to be. He did not throw any flour on the floor, which was of cement. At first he could get no nearer than four feet to the door of the storage room, because, as he said, the fire was coming into the kitchen. As the fire was gradually extinguished, however, the witness "backed up closer and closer," and finally went into the storage room and continued to fight the flames. After the fire was out he noticed that the side walls and ceiling of the storage room were "blistered" and "charred." This "charring" commenced in the door leading from the kitchen into the storage room. There was also some charring in a door that led from the storage room into an automobile house on the west side of the storage room, and more charring inside of the automobile room. The witness did not remember noticing any charring in the laundry. The witness testified that he understood "charred" to mean the condition in which the wood is left when "partly burned, then put out, and what is left there you would call it charred—charcoal." According to the estimate of the witness, it was from twenty-five to forty minutes from the time he first heard of the fire until it was out. He did not see Mrs. Kleis until after the fire was out.

John Downs, called by the plaintiff, owned a blacksmith shop about two hundred feet to the rear of the hotel. He was in front of his shop, talking to a Mr. Mahoney, when he saw a young lady jump out of the hotel laundry. She "hollered," and witness looked and saw that the room was all in a flame inside. Mr. Mahoney pulled off his overcoat and started to fight the fire. Just then Mrs. Kleis jumped out of the room, "just a living torch." Witness grabbed the coat which Mahoney had dropped, ran, and threw it around Mrs. Kleis,

smothering out the fire on her clothing. He testified, further, that the laundry, when Mrs. Kleis came out of it, "was all full of fire; the whole room was full of fire; you could not see anything but fire." The witness' estimate of the time that elapsed from the time the girl came out of the building until he saw Mrs. Kleis come out was forty or fifty seconds.

Sarah Kleis, daughter of the deceased, called for the plaintiff, heard the cry of fire, and went back to the kitchen, but could not get through the house that way, on account of the fire. She returned to the main hall, and there met her mother, Mrs. Kleis, who had been brought into the house. Mrs. Kleis was burned all over, except her face. Her clothing, excepting underclothes, was all burned off, and her shoes were burned to her feet. It was only a few minutes, according to the witness, between the time when she ran out to the kitchen, and the time when she returned to the hall and there met her mother.

Dr. Peck, a physician, called for the plaintiff, testified that Mrs. Kleis was burned all over, except her face, from her feet to her shoulders, and back of her neck. The upper parts of her feet were burned, and also her toes. Most of the burns were of the third degree; that is, clear through the skin. When the witness first saw Mrs. Kleis after the fire, which was about five minutes after she was burned, she said that the building was all on fire. She died in about fifty hours thereafter.

The above is, in substance, all the evidence in the record pertinent to the issue involved, and, while it is somewhat vague and uncertain as to just what portion of the building was burned, and the extent of the burning, it is nevertheless apparent that there was a general conflagration of considerable dimensions, and we cannot say that there was no evidence of the burning of the building. Under the instruction given, the verdict implies a finding that Mrs. Kleis' death was caused by the burning of the building while she was therein, and we cannot say that there was no evidence to sustain this finding.

Order affirmed.