James J. Houlihan, Respondent, *v.* The Preferred Acci-
dent Insurance Company of New York, Appellant.

Insurance (accident) — policy must be construed according to plain
and ordinary meaning of its terms — insurance against injury
"if caused by burning of building."

When a person takes out a policy of accident insurance he cannot reason-
ably expect indemnity outside the limitation of his contract; and when
that contract expressly specifies the kind of accident which it covers,
the rights of the insured and the liability of the insurer are measured
by the specification. Where there is no ambiguity there is no occasion
for the exercise of choice of interpretation; and the insurance policy is
to be construed according to the plain and ordinary meaning of the
terms which the parties have employed.

A policy of insurance was issued by defendant to plaintiff in which plain-
tiff's sister was named as beneficiary. It insured the beneficiary against
the effect of external, violent and accidental injury "if caused by the
burning of a building while the said person is therein." The person
named as beneficiary was burned to death while alone in her room; the
cause or origin of the fire is unknown. Her outcries gave the alarm to
the other occupants of the house, and when they reached her the cloth-
ing which she wore was almost burned off her and the bed clothes and
bedding on her bed were in flames. A quantity of her clothing which
hung on the door was also consumed, but the fire was speedily extin-
guished. The door is described as having been scorched but no portion
of the building was burned. *Held,* that the burning of a building is not
the same thing as the burning of articles in a building, and that, under
the language of the policy, plaintiff is not entitled to recover.

*Houlihan* v. *Preferred Accident Ins. Co.*, 127 App. Div. 630, reversed.

(Argued October 15, 1909; decided November 9, 1909.)

Appeal from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered July
10, 1908, reversing a judgment in favor of defendant entered
upon a verdict directed by the court and granting a new
trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*William D. Guthrie, Talmadge W. Foster* and *Francis S.
Bangs* for appellant. The rule that where an insurance com

pany frames a policy in language which is ambiguous, or which requires interpretation, or which is reasonably susceptible of different meanings, the uncertainty should be resolved *contra proferentem*, is most inapplicable where the policy defines a specific risk in plain and popular language clearly indicating and disclosing a distinct and definite understanding as to the risk assumed and paid for and employing appropriate language not capable of misleading the simplest mind. (*Preston* v. *Æ. Ins. Co.*, 193 N. Y. 142 ; *Nelson* v. *T. Ins. Co.*, 181 N. Y. 472 ; *Peabody* v. *Satterlee*, 166 N. Y. 174 ; *Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6 ; *Foot* v. *Æ. Ins. Co.*, 61 N. Y. 571.) The language of the clause in question — " if caused by the burning of a building " — is quite plain and unambiguous, and there should be no reasonable doubt as to the intention of the parties. (*The Glenlivet*, L. R. [C. P. 1894] 48.)

*Howard Chipp, Edward D. Bryde* and *Charles W. Dayton, Jr.*, for respondent. This is a policy of accident insurance and must be construed liberally in favor of the insured. (Vance on Ins. 565 ; *Rickerson* v. *H. F. Ins. Co.*, 149 N. Y. 307 ; *Herman* v. *M. Ins. Co.*, 81 N. Y. 184 ; *Hoffman* v. *Æ. F. Ins. Co.*, 32 N. Y. 405 ; *Martin* v. *E. A. Assn.*, 61 Hun, 467 ; *Matthews* v. *A. C. Ins. Co.*, 154 N. Y. 449 ; *Marshall* v. *C. T. Assn.*, 170 N. Y. 434 ; *Northrup* v. *R. P. Assur. Co.*, 43 N. Y. 516.) Even upon the defendant's construction of the policy there was a question of fact for the jury, and plaintiff's exception to the direction of a verdict for defendant was well taken and amply justified the Appellate Division in reversing. (*McDonald* v. *M. R. R. Co.*, 167 N. Y. 66 ; Richards on Ins. § 45 ; *Kenyon* v. *K. T., etc., Assn.*, 122 N. Y. 247.)

WILLARD BARTLETT, J. This is an action upon a policy of accident insurance. The policy was issued by the defendant corporation to the plaintiff, and the plaintiff's sister, Mrs. J. B. Manning, was named therein as beneficiary. It insured the

beneficiary against the effect of external, violent and acci-
dental injury (1) if caused solely and directly by the disable-
ment or wrecking of a passenger car using steam, cable, com-
pressed air or electricity as a motive power while the said
person is riding as a passenger therein ; or (2) if caused solely
and directly by the wrecking or foundering of a steam vessel
licensed for the regular transportation of passengers while the
said person is on board such vessel as a passenger; or (3) " if
caused by the burning of a building while the said person is
therein." The action was brought on account of the death
of the beneficiary by fire ; and it was alleged in the complaint
that the said Mrs. J. B. Manning received the external, vio-
lent and accidental injury which resulted in her death by
means of burns caused by the burning of a building while the
said beneficiary was therein.

The proof showed that Mrs. Manning was burned to death
on December 7, 1906, in a room occupied by her at No. 233
West Fifty-fourth street in the city of New York. The fire
broke out while she was alone in the room at about eleven
o'clock in the evening. The cause or origin of the fire is
unknown. Mrs. Manning's outcries gave the alarm to the
other occupants of the house and, when they reached her,
the clothing which she wore was almost burned off her and
the bed clothes and bedding on her bed were in flames. A
quantity of her clothing which hung on the door was also
consumed; but the fire was speedily extinguished. The door
is described as having been scorched, *but no portion of the
building was burned.*

Upon this state of facts the learned judge who presided at
the trial directed a verdict for the defendant and judgment
was entered accordingly. That judgment has been reversed
by the Appellate Division upon the ground that death by
accidental fire in a building was the crucial test of the
defendant's liability and not whether more or less of the
building itself was actually consumed.

In support of the order of reversal the respondent invokes
the doctrine that inasmuch as an accident insurance policy,

whatever may be its form, is intended by the parties to give indemnity for accidental injury, the courts will always go as far as they can to hold the insurer liable, unless in order to do so it is necessary to make a new contract for the parties; and we are referred to *Hoffman* v. *Ætna Fire Ins. Co.* (32 N. Y. 405), where it is said that when the language of a promisor may be understood in more senses than one it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. Reference is also made to the rule laid down by Mr. May in his work on Insurance, quoted with approval in *Rickerson* v. *Hartford Fire Ins. Co.* (149 N. Y. 307, 313) as follows: " When the words are, without violence, susceptible of two interpretations, that which will sustain his claim (that of the insured) and cover the loss must, in preference, be adopted." (1 May on Insurance [3d ed.], § 175.)

If we could find any ambiguity in the language of the contract of insurance in the present case the rule thus stated might well be applicable; but we are unable to do so. To a majority of the court the phraseology of the third clause of the policy insuring the beneficiary against external, violent and accidental injury, " if caused by the burning of a building while said person is therein," seems unmistakably to require the burning of a building, either in whole or in part, as a condition precedent to liability on the part of the insurer. We are not called upon to resolve a doubt in favor of the insured where there does not appear to be any reasonable doubt. The argument that when a person takes out a policy of accident insurance his general purpose is to secure indemnity against the consequences of accidental injury is admissible only with the qualification that he cannot reasonably expect indemnity outside the limitations of his contract; and when that contract expressly specifies the kind of accident which it covers, the rights of the insured and the liability of the insurer are measured by the specification. Where there is no ambiguity there is no occasion for the exercise of choice of interpretation; and the insurance policy is to be construed

according to the plain and ordinary meaning of the terms which the ·parties have employed. (*Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142.)  The burning of a building is not the same thing as the burning of articles in a building ; and yet it is only by holding these terms to be absolutely equivalent in meaning that the defendant can be charged with liability in this case.

We cannot accede to the proposition of the learned Appellate Division that what this policy means " is to insure against accident caused by fire *in a building.*"  That is not what the contract says.    Ordinarily a fire involving the burning of a building, in whole or in part, is a more serious casualty and less apt to occur than a fire which merely consumes some of its contents, without burning any part of the building itself. For a given premium, an insurance company might well be willing to indemnify against an accidental injury due to the less frequent occurrence, when it would not insure as against the consequences of more ordinary fires.    Such a preference is at least conceivable ; and assuming it to exist, how could the insurer evidence an intent to restrict the contract of indemnity to cases grave enough to include the ignition of the structure itself more aptly than is done by the language of the policy before us ?    No clearer phraseology occurs to us unless out of excessive caution a negative provision were to be added stating that the policy was not intended to cover accidental injuries caused by a mere fire in a building not consuming any portion of the edifice.

In our judgment, this is precisely what it means now.    If it was the purpose of the parties to enter into a contract broad enough to embrace any accidental injuries occasioned by fire, it was easy enough for them to do so.    We can determine their intent only by reference to the language they saw fit to use ; and that language seems to us fatal to the claim of the plaintiff.

The order of the Appellate Division should be reversed, and the judgment of the Trial Term affirmed, with costs in both courts.

Vann, J. (dissenting).  By its "Advanced Ten Thousand Dollar Combination Accident Policy," dated September 12th, 1906, the defendant insured "the person so named as beneficiary (Mrs. J. B. Manning) against the effect of external, violent and accidental injury, (1) if caused solely and directly by " railway accident; " or (2) if caused solely and directly by " shipwreck; " or (3) if caused," the words " solely and directly " being omitted, " by the burning of a building while the said person is therein."

On the 7th of December, 1906, while the policy was in force, Mrs. Manning was burned to death by a fire which occurred in the house where she lived.  There was a conflict in the evidence as to the extent of the fire and its effect upon the building, but the jury could have found, if the case had been submitted to them for decision, that the house itself was on fire.  The fire occurred in a room of the building occupied by Mrs. Manning, and the witnesses all agree in substance that the bed clothes and mattresses of the bed upon which she slept were burned; that her night clothing was burned from her; that her clothes hanging in the room were burned; that the matting and rugs were covered with soot and water; that the room was filled with smoke, and that the fire therein was seen from the basement.

In addition to this, May Freely, who was sworn in behalf of the plaintiff, testified that she heard Mrs. Manning call to the witness and say: " Save my room, my little home.  It is on fire."  The witness went to the assistance of the unfortunate woman, and after the fire was out saw the result.  She further testified: " I could see from the appearance of the room that it was badly burned at that time; everything was burned; her clothes off; *the door was burned*, and the bedding was badly burned; all the mattresses nearly consumed, and I could see that the carpet and matting on the floor were destroyed also, as it appeared to me at the time."  Here we have the positive testimony of a witness, who saw the fire and saw the room right after the fire, that " the door was burned." This evidence was not met by the production at the trial,

eighteen months after the fire, of a door showing no evidence of having been burned, for there were two doors to the room, and the jury could have found that the door not produced was burned.   The door was a part of the house, and if the door was burned, the house was on fire.

How the fire caught is not disclosed.   The first information we have on the subject is the frantic call of Mrs. Manning for help and her cry that her " little home " was on fire, and she well knew whether it was on fire or not.   She was found immediately with her clothing on fire, in a room filled with flame and smoke, and when the fire was out one witness observed that " the door was burned."   The case was not closely tried, and we cannot tell from the evidence what took fire first, although it seems probable that the bed caught first, and that the fire spread thence to Mrs. Manning and the contents of the room and from them to the door.

According to a strict and literal construction of the policy it is immaterial whether the building was on fire or not, unless Mrs. Manning's injuries were caused, as the policy states, " by the burning of a building."   Even if the entire building had been destroyed, unless she caught fire from the burning building, there could be no recovery, provided the literal is the legal construction.

The policy does not require this narrow construction.   It is to be observed that the words " solely and directly," used in insuring against accidents by railway and shipwreck, are no part of the clause in question and this discrimination at once suggests some latitude of construction as to the cause of the death.   The insurance is against accident, not against fire, and the destruction of the building, however important in one kind of insurance, is not necessarily of any importance in the other.   In an accident policy the clause would be understood by people generally to mean insurance against accident " caused by fire in a building while the said person is therein," and the learned Appellate Division so read it.   It is the fire, the burning *in* a building, not *of* a building, that causes injury to the person supposed to be protected by the

insurance and that is what the insured had the right to believe
the insurer meant.   Neither contracting party was looking
after buildings, but after persons on fire in buildings and that
was the unfortunate situation of Mrs. Manning.   Even if no
part of the physical structure had been burned, nearly every
one would have said that the house was on fire.

The clause should be construed in accordance with the
general purpose of the contract, which was to insure a human
being against the effects of accident.   This general purpose
should not be cut down and the object of the contract
defeated except by words of such clear and unmistakable
meaning as not to require construction.   " It is a rule of law,
as well as of ethics, that where the language of a promisor
may be understood in more senses than one, it is to be inter-
preted in the sense in which he had reason to suppose it was
*understood* by the promisee." (*Hoffman* v. *Ætna Fire
Ins. Co.*, 32 N. Y. 405, 413.)   As a great writer on insurance
has said, and we have adopted his language in a late case,
" No rule, in the interpretation of a policy, is more fully
established, or more imperative and controlling, than that
which declares that, in all cases, it must be liberally construed
in favor of the insured, so as not to defeat without a plain
necessity his claim to the indemnity, which, in making the
insurance, it was his object to secure.   When the words are,
without violence, susceptible of two interpretations, that
which will sustain his claim and cover the loss must, in pref-
erence, be adopted." (May on Insurance, § 175; *Rickerson*
v. *Hartford Fire Ins. Co.*, 149 N. Y. 307, 313.)

A striking application was made of this rule, which was
established long before Mr. May clothed it in such forcible
language, in *Northrup* v. *Railway Passenger Assurance
Company* (43 N. Y. 516).   In that case the insurance was
against death from personal injury " when caused by any
accident while traveling by public or private conveyances,
provided for the transportation of passengers."   The insured
while on a journey from one part of the state to another
traveled by the Erie railway to Watkins, thence by steamboat

to Geneva, intending to take a train of the New York Central at that place. The distance from the steamboat landing to the railway station was about seventy rods, and although she might have taken a public hack to carry her, she started with her friends to walk and "while in the usual route slipped and fell on the sidewalk, and in the fall the back of her head came in contact with the frozen snow and earth, and she sustained serious injuries thereby from which," soon afterward she died. It was held that the death was covered by the terms of the policy and that the deceased was to be regarded as having received the injury while traveling by public conveyance.

Here a literal construction would have prevented a recovery, for walking is not, in fact, "traveling by public or private conveyances provided for the transportation of passengers," but the court, construing the policy in accordance with its purpose, held that this was its meaning in law. As was well said by the Appellate Division : "If walking seventy rods upon a sidewalk of a village street is to be construed as traveling in a public conveyance for the transportation of passengers, it would seem to follow that a death *caused by the burning of the contents of a room in a building* may fairly be construed to be caused by the burning of a building."

Moreover, the defendant prepared and executed the contract, and, hence, is responsible for the doubt which caused the courts below to differ, and ourselves as well, as to the meaning of the clause in question. (*Rickerson* v. *Hartford Fire Ins. Co., supra.*) It will not do to recognize these rules as the law governing construction, and yet refuse to apply them in a case where ambiguity of meaning is demonstrated by a difference of opinion as to what the real meaning is, not only in the courts below, but in the very court about to decide the case. A refusal to apply under such circumstances is *pro tanto* a destruction of the rule itself.

I think that the trial court erred in refusing to allow the plaintiff to go to the jury and in directing a verdict for the

defendant, an exception in due form having been taken to each ruling.

The order of the Appellate Division should be affirmed and judgment rendered against the appellant, with costs in all courts.

CULLEN, Ch. J., EDWARD T. BARTLETT, HISCOCK and CHASE, JJ., concur with WILLARD BARTLETT, J.; HAIGHT, J., concurs with VANN, J.

Order reversed, etc.