Jesse G. W. Kreiss, Respondent, *v.* Ætna Life Insurance Company, Appellant.

**Accident insurance — policy insuring against injury by reason and in consequence of burning of building — necessary to prove that burning of building caused injury.**

Where an accident policy insured the beneficiary named therein, the wife of the insured, against injuries " by reason and in consequence of the burning of a building while the beneficiary is therein * * * which injuries alone result within ninety days from date of accident in " loss of life, the policy does not mean insurance against accident caused by fire in a building. The burden of proof is upon the plaintiff, and where the evidence shows only that the decedent was burned so that she died, and that there was a fire in the building which burned a portion thereof, but there is no proof and no inference to be drawn from proof that the decedent was burned " by reason of and in consequence of " the fire in the building, or that the burning of the building caused the injury and death of the decedent, plaintiff cannot recover. (*Houlihan* v. *Preferred Acc. Ins. Co. of N. Y.*, 196 N. Y. 337, followed.)

*Kreiss* v. *Ætna Life Ins. Co.*, 181 App. Div. 919, reversed.

(Argued March 18, 1920; decided May 4, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 17, 1917, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Maurice C. Spratt* and *H. W. Huntington* for appellant. There is no evidence to sustain the judgment. The verdict of the jury is based upon speculation and conjecture and not upon any proof found in the record. The motions of the defendant for a nonsuit and a direction of a verdict should have been granted. (*Houlihan* v. *P. A. Ins. Co.*, 196 N. Y. 337; *Maryland Casualty Co.* v. *Edgar*, 203 Fed. Rep. 656; *L'Ecuyer* v. *Indemnity L. & A. Co.*, 97 Kans. 540; *Schintzuis* v. *Lackawanna Steel Co.*, 224 N. Y. 226; *Taylor* v. *City of Yonkers*, 105 N. Y. 202; *Schraff* v. *Jackson*, 216 N. Y. 598; *Stubbs* v. *City of Rochester*, 163 App. Div. 245; *Lucas* v. *International Paper Co.*, 131 App. Div. 368.)

*Henry W. Killeen* and *Matthew W. Weimar* for respondent. The evidence clearly shows a burning of the building within the contemplation of the policy of insurance, and the determination of the question as to whether the beneficiary came to her death as a result of the burning building was properly left to the jury to decide on all the facts and circumstances of the case. The Court of Appeals cannot say that there was no evidence to sustain the finding of the jury. (*Kleis* v. *Travelers Ins. Co.*, 118 Minn. 422; *Wehle* v. *U. S. Mut. A. Assn.*, 153 N. Y. 116; *Singleton* v. *Phenix Ins. Co.*, 132 N. Y. 298; *De Van* v. *C. T. A. Assn.*, 92 Hun, 256; 157 N. Y. 690; *Goldschmidt* v. *Mutual Life Ins. Co.*, 35 N. Y. S. R. 121; 58 Hun, 611; *Thurber* v. *Com. Travelers Mut. A. Assn.*, 51 App. Div. 608; *Harms* v. *Met. Life Ins. Co.*, 67 App. Div. 139; *Hodgson* v. *Preferred A. Ins. Co.*, 182 App. Div. 381; *Tucker* v. *Mutual*

*Benefit Life Co.*, 50 Hun, 50; *McDonald* v. *Met. St. Ry. Co.*, 167 N. Y. 66.)

ELKUS, J.   On October 8th, 1910, the defendant issued to the plaintiff a policy of accident insurance insuring the plaintiff against disability or death through accidental means and also agreed that, if the beneficiary named in the policy was not the insured or an insured beneficiary under any other policy issued by it, that it also insured such beneficiary against bodily injuries effected through accident while a passenger in a car " *or by reason and in consequence of the burning of a building while the beneficiary is therein,* * * * which injuries alone result within ninety days from date of accident in " loss of life, etc.   In the renewals of the policy of insurance, plaintiff's wife, Pearl H. C. Kreiss, was named as beneficiary.

On October 5th, 1915, while the policy was in force, Pearl Kreiss lost her life and the plaintiff claims her death creates a liability under the policy because it was in consequence of the burning of a building while Mrs. Kreiss was therein.

The defendant admits the death of Mrs. Kreiss, but denies that it took place in such manner as to entitle the plaintiff to recover.

Upon the trial, testimony was given by both plaintiff and defendant as to the circumstances of Mrs. Kreiss' death.

The question submitted to the jury was whether Mrs. Kreiss met her death in accordance with the terms of the policy, and the jury found for the plaintiff.   To all of which exception was duly taken.

From the judgment entered upon such verdict and the order denying the motion for a new trial the defendant appealed to the Appellate Division which affirmed the judgment, two of the justices dissenting and voting for reversal and the dismissal of the complaint, and from the judgment of the Appellate Division entered upon such decision, appeal is taken to this court.

The question is a narrow one and depends entirely upon whether or not the case discloses any evidence which could bring the plaintiff within the provisions of the policy. This court has construed a policy almost identical in its terms and clearly laid down what burden of proof the plaintiff must discharge before it can be entitled to recover. (*Houlihan* v. *Preferred Accident Ins. Co. of N. Y.*, 196 N. Y. 337.) As that case sets the standard of proof which the defendant must reach, a statement of the rule of law it laid down is important.

The policy in the instant case reads, " if the beneficiary lost life *by reason and in consequence of the burning of a building while the beneficiary is therein.*" In the *Houlihan* case the policy read if " caused by the burning of a building while the said person is therein."

The terms of the two policies are thus practically identical. If anything, the policy in the instant case is a trifle stronger as requiring that the death or injury shall be " by reason and in consequence " of the burning instead of if " caused " by the burning.

In the *Houlihan* case it was attempted to hold the provision of the policy to mean that it is the burning *in* a building, not *of* a building, causing injury to the beneficiary; that was what the insured had the right to believe the insurer meant. (See dissenting opinion of VANN, J., page 344.)

The majority of this court, WILLARD BARTLETT, J., writing the opinion, however, held that there was no ambiguity in the language of the policy; that the clause referred to " seems unmistakably to require the burning of a building, either in whole or in part, as a condition precedent to liability on the part of the insurer." (p. 340.)

The opinion continues: " We are not called upon to resolve a doubt in favor of the insured where there does not appear to be any reasonable doubt. The argument that when a person takes out a policy of accident insurance his general purpose is to secure indemnity against

the consequences of accidental injury is admissible only with the qualification that he cannot reasonably expect indemnity outside the limitations of his contract; and when that contract expressly specifies the kind of accident which it covers, the rights of the insured and the liability of the insurer are measured by the specification."

Discussing the proposition that the policy means insurance against accident caused by fire *in a building*, it disposes of that proposition by saying that that is not what the contract says.

" Ordinarily a fire involving the burning of a building, in whole or in part, is a more serious casualty and less apt to occur than a fire which merely consumes some of its contents, without burning any part of the building itself. For a given premium, an insurance company might well be willing to indemnify against an accidental injury due to the less frequent occurrence, when it would not insure as against the consequences of more ordinary fires. Such a preference is at least conceivable; and assuming it to exist, how could the insurer evidence an intent to restrict the contract of indemnity to cases grave enough to include the ignition of the structure itself more aptly than is done by the language of the policy before us? No clearer phraseology occurs to us unless out of excessive caution a negative provision were to be added stating that the policy was not intended to cover accidental injuries caused by a mere fire in a building not consuming any portion of the edifice." (p. 341.)

The testimony in the instant case as to the circumstances of the burning of Mrs. Kreiss does not meet the limits of this decision and there is no evidence which will support the verdict of the jury.

The plaintiff and Mrs. Pearl H. C. Kreiss were husband and wife, living with Mrs. Kreiss' father and mother, Mr. and Mrs. Leopold Schmidt, at No. 344 Sycamore street in the city of Buffalo. Mr. Schmidt maintained a barroom on the ground floor of the premises, behind which

was a kitchen in which the family cooking was done as well as the cooking for Mr. Schmidt's business.

No one who is alive saw the beginning of the fire nor the burning of Mrs. Kreiss. The second floor of the building consisted of a series of rooms, one of which was 'a kitchen, out of which there was one door leading into the bathroom; another door leading into the hall with a stairway going to the lower floor; and another door leading to the dining-room, which immediately adjoined the kitchen. The kitchen had in it, among other things, a sewing machine, a morris chair, a stove, a small heater and a sink of enameled iron. There was a sinkboard back of the sink and wainscoting, and one or more windows in the room. There was no fire in the room and no means of a fire except a gas stove.

It appeared that there were two kitchens in the building — one kitchen which was downstairs, back of the barroom, already referred to, and which was always used to do the family cooking, and the other in the apartment upstairs. There was never any fire upstairs or any means at the time to do cooking there. The cooking was done in the kitchen downstairs. The kitchen in which the fire occurred was upstairs.

On the day of the fire, about one-half hour before it occurred, Schmidt saw his wife and daughter when they were in the kitchen downstairs. Shortly after that he went into the downstairs kitchen and called up to his daughter who was upstairs to ask her mother how many potatoes he should purchase from a passing huckster. He did not see his daughter, but she called his wife, and his wife spoke to him from upstairs. He went out of doors for the potatoes and as he was returning he heard his wife and daughter screaming upstairs. He ran upstairs and when he got there the kitchen was afire. He found the two women at the kitchen sink, in the southeastern part of the room, hugging each other. He carried his wife downstairs and then returned for his daughter,

but did not find her. The witness was burned. He shut all the doors of the kitchen so that the fire could not go any further; he was the only person in the building.

In the meantime, it appeared that his daughter had gone downstairs into the yard and was there assisted by a neighbor. The door, the wainscoting, the curtains, the sewing machine, the window frames and the room were all in one blaze of fire when Mr. Schmidt arrived there. He thought the greater part of the fire was at the door entering the dining-room and around the wainscoting.

Mrs. Schmidt was severely burned and subsequently died.

Mr. Schmidt said his daughter's face was burned; that neither his wife nor his daughter had any clothing on after the burning.

Mr. Schmidt further testified that his wife and daughter never had a fire upstairs, although there were two stoves there and gas was used in these stoves when they lit them, but they were not lit; that the gas was not on, but that anybody could turn on the valves at the stove which controlled the supply of gas to the stove. No work was done upstairs. Everything was done downstairs. There was a kitchen for that purpose and so far as he knew there was no fire upstairs and no way a fire could communicate from the kitchen downstairs. He said no one knew how the accident happened except his wife and daughter, who were dead.

His wife was not burned as badly as his daughter; all his daughter had on was her corset cover, until somebody gave her a shawl. When he went upstairs, the door was open in the hall and he could not tell whether the door leading from the hall into the kitchen was open. The fire was inside the kitchen, inside the room.

The plaintiff testified that when he saw his wife in the hospital shortly after the accident, she was burned from the breast up; her hair was burned off; her ear was burned off and her nose. The plaintiff went to his home about an

hour after the accident, and found no fire burning. He said the table cloth on the table in the kitchen was burned completely, the curtains on the windows were burned; the shades and draperies in the kitchen and in the hall were burned; the morris chair was burned beyond further use and that this chair was located in the center of the room in front of the stove; the matting on the floor was also burned completely, the sewing machine and four umbrellas which had been standing between the door and the sink were entirely burned, except a few wires, and that any draperies or anything like that in the room were burned; that the cost of the carpentry repairs was $38.

One Schmidt, in the fire insurance business, examined the premises immediately after the fire; found some of the woodwork had been charred, so that parts of it were blistered and had to be replaced; the windows broken and the sink damaged by fire.

Dietschler, another insurance man, examined the premises a week after the fire and discovered that there was damage in the hallway from the flames; the paint was blistered and charred on the wainscoting around the side of the room and the window frames were charred. The fire burned fully half way through the wainscoting or more. The iron and enameled part of the sink was all stained from the fire and the wood of the drainboard was burned.

Hann, a carpenter, testified that he made the repairs necessary because of the fire; that it looked as though they had carried something burning down the stairs; as though small pieces had fallen and burned a black spot into the steps; one-quarter of the door leading from the kitchen to the dining-room was burned, the door and casing of the frame; the wainscoting around the sink was burned from the sink to the wainscoting cap. The room was twelve by fourteen feet and there was about twenty-four or twenty-five feet of wainscoting that had to be replaced. He put in a new door frame, because the one there was

burned beyond repair and the top of the sink was burned — what they call the drainboard. His bill was $38.

Kleinfelder, a neighbor of the plaintiff, testified when he heard the cry of "fire" he went into the alleyway on the west side of the building and saw Pearl Kreiss running, her clothing all ablaze. He tripped her up and took off his coat and put it around her to put out the blaze. After the firemen arrived, he went into the kitchen and saw the wainscoting was burning a little, the door leading into the dining-room and one of the window sills were burning. One window sash was fairly burned. They were still burning a little when he got there. He saw no fire in the stove. The morris chair was burned. The sinkboard was much burned, and the door leading to the front room was burned. Most of the fire when he got there was near the sink and the door-sill leading to the other room. He did not notice any gloves on Mrs. Kreiss.

Plaintiff further testified that his wife never cleaned gloves.

This was the substance of the plaintiff's case so far as the accident was concerned.

On behalf of the defendant, one Boore, a captain in the fire department, who, at the time of the fire, was a lieutenant, testified that the call for the fire came at 2:05 P. M. on October 5, 1915. It took him about two or two and one-half minutes to reach the place of the fire. He ran in the alleyway alongside the building in question and up the rear stairway into the kitchen. There was fire on the table cloth covering the kitchen table that stood against the west wall of the kitchen, in the cushions of the morris chair, which was nearly in the center of the room, and in the drapery over the door leading from the kitchen, that was all the fire, except the fire in the kitchen stove. There was a kitchen stove, with one lid off, *and the gas was blazing from the burner, which he turned out.* The room was mostly

scorched. The fire was burning slowly when he got there. The wallpaper was charred; the window frames were scorched, one in particular, which he opened, at the northwest corner of the room. He had not noticed the board of the sink nor had he noticed the doors. The contents of the room were not all burning. The table cloth, the morris chair, the drapery and the window curtains were burning or had burned. The fire was put out by one of the members of the fire department with a hand extinguisher and this did not take more than a couple of minutes. There was no fire in the hallway. It was all in the kitchen. They had no difficulty in getting in the kitchen as there would have been had there been a fire in the doorway.

Brummer, a fireman, testified that he went with the last witness to the fire and found fire in the curtains, morris chair, door frame and door. He took his hand chemical just as quickly as he got inside the kitchen door and started from one end of the room and worked around and extinguished everything that was in the room, and still had chemical left, using about one and one-half gallons of chemical. The stream was about one-quarter inch. The door leading into the dining-room was burning. The wainscoting was scorched. The cloth on the kitchen table was burning and also the kitchen table.

Dr. Wilfred Wright, who was house surgeon at the German Hospital, testified, apparently without objection, as follows: " Q. State what she (Mrs. Schmidt) said when you asked her how it happened? A. She said her daughter was cleaning gloves and the gasoline caught fire. That is all I asked her." He was not cross-examined as to this.

The trial court, in charging the jury, said: " The preponderance of evidence in this case goes to these two propositions, and it is necessary that the plaintiff satisfy you of these two propositions by a preponderance: Did

this building burn in whole or in part? first. Second: Did Mrs. Kreiss die as a result of the burning of that building in whole or in part, or in consequence of her injuries received at the time the building burned in whole or in part? That is all there is to this lawsuit, I believe, so far as the Court desires to submit it to the jury. * * * If the injuries came, and the death which is admitted as a result of this burning came, to the plaintiff's wife by reason of a fire of what, if you please, was a table, or a sink, or a chair, or some piece of furniture, that plaintiff is not entitled to recover, and the Court says to you as a matter of law that that is correct," and further that the plaintiff was entitled to recover notwithstanding Mrs. Kreiss' act caused the fire, and then, finally, the court said: " To sum this case up: If you believe that this building was burned in whole or in part, and you believe as a result and in consequence of the burning of that building, this wife of the plaintiff, the deceased, came to her death, then the plaintiff is entitled to a verdict at your hands in the sum of three thousand dollars, with interest from the fifth day of October, 1915. If, on the other hand, you believe that this building did not burn in whole or in part, your verdict will be one of no cause of action. Again: If you do not believe that this deceased died as a result and in consequence of the burning of the building, your verdict will be one of no cause of action, but, if you believe that, first, the building burned in whole or in part and that she died in consequence of the injuries received by the burning of that building, then you will return a verdict, as I have suggested, for the plaintiff."

Exception was duly taken to the submission to the jury of the question of whether there was a burning of the building within the meaning of the policy. The court was requested to charge that there was no burning of the building within the meaning of the policy, which was refused, and exception taken.

By exceptions, defendant duly raised all the points which were necessary to sustain its defense.

The plaintiff's theory of the accident is that:

" Mrs. Kreiss and her mother in the room saw the fire burning over the sink, screamed, went over to extinguish it and were ignited whilst standing near, or over the sink, by flames communicated from the wainscoting or sinkboard.

" This was the only reasonable inference to be derived from plaintiff's case, and was a more reasonable inference on the entire case than the conjectural theory offered by defendant."

Plaintiff states, with emphasis, that this court cannot say that there is no evidence in this record to sustain the finding of the jury. The *Houlihan* case is claimed to be distinguished from the instant case because the rule of the *Houlihan* case decided only that the burning of a building must cause the injuries or death sued for, and that the trial court followed that rule by leaving it to the jury to decide whether or not the burning of the building caused the injuries. In the *Houlihan* case the beneficiary was burned to death in a bed which was in the center of the room and no portion of the building was burned.

The question before this court turns on this: There is no doubt in this case that a portion of the building was burned — the kitchen door, the wainscoting, window frames and the sinkboard, and the defendant substantially concedes this.

But is there any proof from which an inference may fairly be drawn or be drawn at all that the burning of these parts of the building caused Mrs. Kreiss to burn? We have the evidence of Mr. Schmidt, the father of Mrs. Kreiss, that one-half hour before the accident there was no fire in the kitchen upstairs, that there was no need of any fire. We have the statement made by

Mrs. Schmidt to the physician, which possibly was inadmissible, that her daughter was burned while cleaning her gloves with gasoline and the uncontradicted testimony of the fire lieutenant that he turned off the burning gas jet in the stove.

Assuming, as we must, every inference favorable to the plaintiff, is not the testimony substantially this:

The plaintiff's intestate was burned so that she died. There was a fire in the building, which burned a portion of the building — so far, so good. But there is no proof and no inference to be drawn from proof that the decedent was burned " by reason and in consequence of " the fire in the building.

The *Houlihan* case as applied to the instant case decided that, in order that the policyholder may recover, there must be a fire in the building and that the fire must have caused the burning of the beneficiary or was simultaneous with it, but if the beneficiary caught fire while she was cleaning gloves or in some other way, and not by reason of the burning of the building, which did not actually burn, the plaintiff could not recover.

The plaintiff argues that if the plaintiff cannot recover under these circumstances, the policy is a fraud. But his argument in his own brief furnishes the answer to this:

He says and says correctly: " All that it is necessary for plaintiff to prove, under the within mentioned policy of insurance, is that there was a burning of a building, and that such burning building caused the injuries or death of the beneficiary whilst she was therein. Evidence being adduced to clearly show that some portion of the building as a structure did burn, the remaining issue is as to whether that burning of the building, in whole, or part, caused the decedent's death. And to establish the latter fact, direct eye-witness evidence is not necessary."

The plaintiff does prove that there was a burning of the building, but he does not prove by any evidence

whatsoever that the burning of the building caused the injury and death of his wife.

The policy in suit is a plain contract. It granted an additional benefit to the insured, by insuring the beneficiary (his wife) against accident and agreed to compensate the plaintiff for injury to her under certain expressed conditions. The defendant had a right to limit its liability, so that there could be recovery only if, among other things, the beneficiary was burned as a result of a fire in a building and not she herself burning first. As was said in the *Houlihan* case: " If it was the purpose of the parties to enter into a contract broad enough to embrace any accidental injuries occasioned by fire, it was easy enough for them to do so." ·

The inference might be drawn that the fire occurred while Mrs. Kreiss had been cleaning gloves with gasoline and then, with the gloves on her hand, was drying them over the gas fire and she caught fire and was burned, and, from her, her mother caught fire and the fire spread to the rest of the articles in the room and to the door and other parts of the building. °

I have deemed it unnecessary to discuss the case of *Kleis* v. *Travelers Ins. Co.* (118 Minn. 422), relied upon by plaintiff, as I believe the *Houlihan* case is controlling and the facts in the *Kleis* case may well warrant a different finding than in the instant case.

The judgment and order appealed from should be reversed and a new trial granted to the plaintiff, with costs to abide the event of the action.

HISCOCK, Ch. J., COLLIN and McLAUGHLIN, JJ., concur; HOGAN, POUND and ANDREWS, JJ., dissent.

Judgment reversed, etc.