National Bank of Commerce *v.* New York Life Ins. Co.

(*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

300

H. H. HONNOLL, of Memphis, for complainant-appellant.

KING, KING & LAUGHLIN, of Memphis, for defendant-appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought to recover a double indemnity on a life insurance policy providing therefor in the event of death of the insured from accidental causes. The insured in the instant case, Virgil E. Miller, was killed while traveling as a pay passenger on a regular scheduled flight of an airplane on a trip betweeen Nashville and Memphis, while the airplane was being operated by the American Airlines.

Liability was denied by the Insurance Company in reliance upon an excepting provision of the policy that double indemnity benefits ''will not apply if the insured's death resulted from self-destruction, whether sane or insane; from any violation of the law by the insured; from military or naval services in time of war; from engaging in riot or insurrection; from war or any act incident thereto; from *engaging as a passenger or otherwise, in submarine or aeronautic operations*, etc.''

The Chancellor sustained a demurrer and dismissed the bill, holding that the language italicised above relieved the insurer of liability.

It is urged for appellant that (1) this language properly construed does not exclude from coverage one who is not engaging at the time of his death in aeronautic operations, either as a passenger or otherwise, but is in the situation only of a casual traveler as a fare-paying passenger in a licensed passenger aircraft on a regular scheduled passenger air trip; and that (2) if it was the intention of the insurer by whom the contract of insurance was worded to exclude from coverage one in this situation, it would have been a very simple matter to do so in plain and unambiguous terms, and if ambiguity has resulted, a case is clearly presented for application of the rule that an ambiguous contract of insurance is to be construed most favorably to the insured and strictly aganist the insurer, citing our latest case, *Baugh* v. *Metropolitan Life Ins. Co.*, 173 Tenn., 352, 117 S. W. (2d), 742, wherein this is said to be a "familiar rule;" also, *Stovall* v. *New York Indemnity Co.*, 157 Tenn., 301, 8 S. W. (2d), 473, 72 A. L. R., 1368, and other cases.

We have no Tennessee decision construing the particular language above quoted from the policy sued on in this case. However, diligent counsel on both sides have furnished us with briefs calling attention to holdings in other jurisdictions apparently supporting both contentions.

We are most favorably impressed with the holding of the New York Court of Appeals in the recent case (March 4, 1943) of *Hartol Products Co.* v. *Prudential Ins. Co.*, 290 N. Y., 44, 47 N. E. (2d), 687, and with that in *Equitable Life Assurance Society* v. *Dyess*, 194 Ark., 1023, 109

S. W. (2d), 1263, in both of which practically identical language, is construed and liability under like circumstances shown in the instant case adjudged. The New York case is not only well reasoned, but it is by the highest court in the State of the domicile of this appellee. The language therein construed excepts an insured whose death results ''from having been engaged in military or naval service in time of war.; or in submarine operations or in aviation or aeronautics, as a passenger or otherwise.'' [290 N. Y., 44, 47 N. E. (2d), 689.] A comparison of this language with that found in the quotation from the policy before us demonstrates the direct applicability of the decision in the New York case.

It is at once apparent that the term ''engaging . . . in . . . aeronautic operations'' has an occupational connotation. It is unnecessary to cite dictionary definitions for the commonly understood meaning of the term ''engaging in.'' It cannot be reasonably contended that one using language with any degree of selective care would describe a fare-paying casual passenger, who boards a plane on a regular route operated by an established line, such as the American Airlines, to be conveyed from Memphis to Nashville, is engaging in aeronautical operations. If he purchased a bus ticket and rode by regular bus line between the same points, it would be utterly unnatural to refer to him as engaged in bus line operations. The same may be said of one who buys a ticket and rides a railroad train between the same points.

As we read the brief of learned counsel for appellee, it seems to be practically conceded that this bare phrase would not exclude from coverage the insured in this case. Reliance seems to be rested upon the added words, ''as

a passenger or otherwise.'' We would be inclined to concede some controlling significance to these words, if the insurer had further clarified and distinguished by adding simply the word, ''fare-paying,'' or even ''paid,'' as a qualifying prefix to the word passenger. We would have then had a definite designation distinguishing one in such a situation from a passenger who is at the same time an employee, or official, of one of the numerous types habitually riding on planes as a part of his regular oc-.cupation.

The parenthetically inserted phrase in the instant policy ''as a passenger or otherwise'' does not come into play or call for consideration until the insured has come within the general description, while ''engaging . . . in submarine or aeronautic operations.'' It is only a passenger who is at the time engaged in such operations that is excluded from coverage.

Our view is strengthened by a consideration of the fundamental difference in the measure of risk, as between one who is a mere fare-paying passenger from point to point and one who is riding as a passenger as a part of the performance of his occupational duty. Without attempting an accurate statement of the comparative risk, we are sure that it is conservative to say that the risk involved in a contract insuring such an occasional, casual farepaying passenger is negligible as compared to that incident to coverage of one occupationally engaged in aeronautic operations, constantly and from day to day on flying machines and in and about their landing fields. Superintendents, inspectors, employees of all classes, including officials, are subjected to a risk multiplied many fold.

In support of this suggestion, it is a matter of common business knowledge and, particularly, acquaintance

with the policies and practices of insurers, that many of the Companies today have so revised the exclusion clause under the double indemnity provision in policies of this class that, while they exclude from coverage generally death resulting from service, travel or flight in any species of aircraft, they except from this exclusion and accept liability where the insured is "a fare-paying passenger in a licensed passenger aircraft piloted by a licensed passenger pilot on a scheduled passenger air service regularly offered by an incorporated carrier between specified established airports," to quote language which appears in more than one of the contracts now issued by leading insurers of the country. That this specially limited risk is assumed without appreciable additional cost is significant that provisions worded as the one before us in the instant case were not intended to exclude one in such a classification, but to have application to passengers occupationally engaged in aeronautical operations.

In any event, enough has been said to demonstrate that the familiar rule which resolves the doubt in all cases of ambiguity against the insurer must be given application.

Reference has been made to *Hartol Products Co.* v. *Prudential Ins. Co.*, and *Equitable Life Assur. Soc.* v. *Dyess*. Other cases cited in the brief of appellant which sustain the views expressed are: *Day* v. *Equitable Life Assurance Society* (10 Cir.), 83 F. (2d), 147, *certiorari* denied 299 U. S., 548, 57 S. Ct., 11, 81 L. Ed., 404; *Provident Trust Co. of Philadelphia* v. *Equitable Life Assurance Society*, 316 Pa., 121, 172 A., 701; *Massachusetts Protective Ass'n* v. *Bayersdorfer* (6 Cir.), 105 F. (2d), 595.

██ The brief quotes extensively from the opinions in the *New York Case,* the *Arkansas Case, Day* v. *Equitable Life Assurance Society, supra,* and *Provident Trust Co. of Philadelphia* v. *Equitable Life Assurance Society, supra.* In the last mentioned case, it was said, applicable here, ''the assured was a passenger, but he was not engaged in an aeronautic expedition.'' [316 Pa., 121, 172 A., 702.] In conclusion, we quote with approval from the *New York Case* the following:

''The obvious ambiguity is emphasized by the ease with which the defendant could have excluded fare-paying passengers upon an isolated flight when not engaged in the occupation or calling of aviation or aeronautics.''

The average person applying for a policy would no more think of a passenger on an airplane as being engaged in aviation or aeronautics than he would think of a passenger on a railroad train as being engaged in railroading or a passenger on an ocean liner as being engaged in navigation.

And further, ''But insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import.''

Also, the following passage from the *Arkansas Case* [194 Ark., 1023, 109 S. W. (2d), 1265] referred to above:

''It would appear a simple thing for a great institution, such as appellant, to write a clause in its policies exempting itself from such liability in plain and simple language.''

And, finally, the following from the opinion in *Day* v. *Equitable Life Assurance Society, supra* [83 F. (2d), 148]:

"*If it were intended, when the policy was drafted and offered for sale, to exclude from coverage every loss resulting from an airplane trip or flight, it is believed that counsel drafting the clause could have found language less apt to mislead the buying public than such a redoubtable phrase as this.* Judge GARDNER's language in *Gregory* v. *Mutual Life Ins. Co., of New York* (8 Cir.), 78 F. (2d), 522, 524, is apposite:

" 'Nearly a million passengers were carried by airplane last year. Insurance companies know that the public to which they are selling insurance is to a greater or less extent so traveling. These companies either intend to insure against accident resulting from the use of the airplane as a means of transportation, or they do not, and it is only fair that if they do not intend to include such hazards that it should be made so clear that a person of ordinary intelligence on reading the contract offered will readily understand that such hazard is not covered. The expression, being doubtful and ambiguous, must be construed most strongly against the insurance company.' " (Emphasis ours.)

We have considered authorities cited in the able brief of appellee, and while it is true that in one or more of the cases cited a different conclusion has been reached by other Courts, notably *Goldsmith* v. *New York Life Ins. Co.* (8 Cir., 1934), 69 F. (2d), 273, and *Mayer* v. *New York Life Ins. Co.* (6 Cir., 1934), 74 F. (2d), 118, 99 A. L. R., 155, we prefer the reasoning and holding in the cases above referred to, and it may be added that this divergence in construction of much the same language tends

strongly to support the conclusion that the language is of doubtful import, bringing the case under the well known rule applied in cases of ambiguity.

The decree is reversed and judgment will be entered here for the appellant.