PACIFIC MUTUAL LIFE INSURANCE COMPANY *v.* CHARLES A. WALT, Administrator.

(*Jackson,* April Term, 1955.)

Opinion filed March 11, 1955.

W. E. QUICK and QUICK, BUCHAGNANI, GREENER & YOUNGER, all of Memphis, for petitioner.

CHARLES L. GLASCOCK, of Memphis, for respondent.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The only question involved in this lawsuit is the construction of a paragraph in the policy of insurance issued by the petitioner. The policy issued was an accident and sickness policy providing for payment in the principal sum of $750 for accidental death, the monthly indemnity at the rate of $60 per month for total disability, with an additional indemnity at the rate of $2 per day during such time as the insured should be confined to a hospital. There is no controversy between the parties in respect to the

single indemnity under the policy, and this has been tendered into court by the Insurance Company but the dispute arises in reference to the double indemnity clause of the insurance contract which is as follows:

"Any amount payable under Article 1 for loss of life, for loss of either hand, for loss of either foot, for loss of sight of either eye, or for loss of thumb and index finger of either hand, or under Article 3 or 4 (Total or Partial Disability) will be doubled if such injuries are sustained by the Insured (a) *in consequence of the burning of a building, provided the insured is therein or thereon at the commencement of the fire;* * *". (Emphasis ours.)

The two lower courts found that the injuries received by the insured under this policy brought him within this double indemnity feature and therefore found against the Insurance Company on this question. The Court of Appeals rendered a split decision, Avery, P. J., dissenting. The Chancellor seems to have reached his conclusion largely because he thought that under what he calls the "liberality of construction rule which was adopted in the case of *National Bank of Commerce* v. *New York Life Ins. Co.*, 181 Tenn. 299, 181 S. W. 2d 151," he was forced to decide against the Insurance Company and in favor of the insured's administrator. In reading this case we feel though that this Court, speaking through Mr. Justice Chambliss, felt constrained to follow precedents of New York and other States interpreting the identical language that was involved in this Bank of Commerce case—this especially being true since the policy involved was a new York policy and the New York Courts had adopted the same interpretation of the language involved in the policy in that case. We feel that this opinion was largely based

on what this Court, at that time, considered to be the correct interpretation of the language used in the New York Life policy. The Court concluded that the language there used was ambiguous and thus followed the well-recognized rule of when there is ambiguity that such ambiguity should be construed against the Insurance Company and in favor of the insured.

The real question involved here is whether or not the language "in consequence of the burning of a building, provided the insured is therein or thereon at the commencement of the fire", is ambiguous or unambiguous. If the language is unambiguous or free from reasonable doubt, it is our obligation to give effect to the contract as written. *Seay v. Georgia Life Ins. Co.,* 132 Tenn. 673, 676, 179 S. W. 312; *Moore v. Life & Casualty Ins. Co.,* 162 Tenn. 682, 685, 40 S. W. (2d) 403; *Inman v. Life & Casualty Ins. Co.,* 164 Tenn. 12, 16, 45 S. W. (2d) 1073, 1074, and others. While on the other hand if this phrase of the contract is ambiguous or subject to two meanings it is our duty to strictly construe the contract against the insurer and in favor of the insured. *National Bank of Commerce v. New York Life Ins. Co.,* 181 Tenn. 299, 181 S. W. (2d) 151; *Baugh v. Metropolitan Life Ins. Co.,* 173 Tenn. 352, 117 S. W. (2d) 742; *Monroe County Motor Co. v. Tennessee Odin Ins. Co.,* 33 Tenn. App. 223, 231 S. W. (2d) 386, and *Brandt v. Mutual Benefit Health & Acc. Ass'n,* 30 Tenn. App. 14, 202 S. W. (2d) 827.

In all the cases that we can find, or have been cited to, the courts in construing this double indemnity feature, worded almost identical with the clause herein, are using the words "in consequence of the burning of a building", have held that this language is unambiguous and that the burning of the building is not the same thing as the burn-

ing of articles contained in the building. For cases on this question see *Houlihan* v. *Preferred Accident Ins. Co., of N. Y.,* 196 N. Y. 337, 89 N. E. 927, 928, 25 L. R. A., N. S., 1261; *Maryland Casualty Co.* v. *Edgar,* 4 Cir., 203 F. 656, 658-659; *Kreiss* v. *Aetna Life Ins. Co.,* 229 N. Y. 54, 127 N. E. 481; *Provident Life & Acc. Ins. Co. of Chattanooga, Tennessee* v. *Brooks,* 5 Cir., 179 F. (2d) 909; *Farley* v. *Aetna Life Ins. Co.,* 200 Mo. App. 460, 207 S. W. 281; *Arnold* v. *Travelers' Ins. Co. of Hartford, Conn.,* 48 R. I. 208, 136 A. 690, 691, 56 A. L. R. 488; 29 Am. Jur., page 765, Sec. 1013.

To this list of cases construing this language there is the one exception. This exception is *Wilkinson* v. *Aetna Life Ins. Co.,* 240 Ill. 205, 88 N. E. 550, 25 L. R. A., N. S., 1256. It was this last case that the Court of Appeals followed herein.

From the foregoing statement it is obvious why we granted the writ. The case has now been ably briefed and argued and we have the matter for disposition.

The Court of Appeals concurred with the finding of the Chancellor:

"that the evidence preponderates in favor of the defendant's theory that the fire orginated from the deceased smoking in bed, and that the principal cause of the deceased's death was from burns sustained from the burning mattress and bed clothing rather than the burns sustained from the burning floor."

The Court of Appeals further said:

"The proof is far from conclusive on this score."

The insured was a 65-year-old man and he occupied an apartment in the home of a lady in Memphis, Tennessee. The night of March 14, 1953, after the owner of the home

had retired her attention was attracted to a noise coming from the direction of the deceased's apartment. She describes the noise as a thud, like a person falling on the floor, and upon going to the rear of the house to investigate, she detected the odor of burning rags and saw smoke pouring from the rear window of the deceased's apartment. She was unable to arouse his attention and found that the door was locked on the inside and as a result of this she called the fire department. The firemen broke into the room and found it filled with smoke but saw no flames. The fire was confined to the mattress on the bed which did not "flame up" until the firemen threw the mattress out the window. The deceased was lying on the floor alongside of the bed. There was a "scorched place" or burned place on the floor near or about where the deceased was lying which could not be sanded out but the planks had to be cut out where this burned place was. The flame and fire was confined to the mattress entirely.

The investigators at the fire department testified that the insured's injuries resulted from the fire in the bed. The deceased died shortly after being taken to the hospital but before his death he was able to give the police department some information about how the fire started. He says that "he woke up from the smoke in the room", and it was from this that the police department concluded that the deceased (insured) was smoking in bed "because that could be seen, that the bed caught on fire. * * *".

It is obvious from what has been said above that the question involved is whether the insured (deceased) sustained his fatal injuries "in consequence of the burning of a building", as distinguished from the burning of the

contents of the building, so as to entitle the insured's estate to double indemnity under Article 5 of the policy contract above quoted.

The two courts as is seen from the quotation above agree that the preponderance of the evidence is to the effect that the insured was smoking in bed and that he received his fatal injuries as a result of the burning of the mattress and bed clothing, as distinguished from the burning of the building. There is no proof whatever that the two burned places or charred areas on the floor had anything to do with the extensive second and third degree burns which the insured had sustained to his entire body and extremities. It must be remembered that this lawsuit involves the rights of the deceased's estate under a contract—it is not a tort action. This being true these rights or whatever rights the deceased's estate has to recover from the Insurance Company "are defined and limited by the intentions of the parties as expressed in the policy. That intention is determined by what the law of insurance, which is the fruit of many judgments rendered between men in similar circumstances, says the parties meant by the language used." *Colley* v. *Pearl Assurance Co.*, 184 Tenn. 11, 195 S. W. (2d) 15, 17.

Applying this rule of construction to the language in the contract in the case now before us ("in consequence of the burning of a building, provided the insured is therein or thereon at the commencement of the fire") it seems to us that such language is unambiguous and that under the facts of the case herein the parties certainly did not contract for double indemnity for an injury or an accident arising out of such facts. We think that the great weight of authority has so construed this language

and that the one case hereinbefore cited as an exception thereto is clearly distinguishable. We cannot improve upon the language used by the New York Court of Appeals in *Houlihan* v. *Preferred Accident Ins. Co. of New York,* supra, when that Court said [196 N. Y. 337, 89 N. E. 928]:

"To a majority of the court the phraseology of the third clause of the policy insuring the beneficiary against external, violent and accidental injury, 'if caused by the burning of a building while said person is therein,' seems unmistakably to require the burning of a building, either in whole or in part, as a condition precedent to liability on the part of the insurer. We are not called upon to resolve a doubt in favor of the insured where there does not appear to be any reasonable doubt. The argument that, when a person takes out a policy of accident insurance, his general purpose is to secure indemnity against the consequences of accidental injury, is admissible only with the qualification that he cannot reasonably expect indemnity outside the limitations of his contract; and, when that contract expressly specifies the kind of accident which it covers, the rights of the insured and the liability of the insurer are measured by the specification. Where there is no ambiguity, there is no occasion for the exercise of choice of interpretation; and the insurance policy is to be construed according to the plain and ordinary meaning of the terms which the parties have employed. *Preston* v. *Aetna Ins. Co.,* 193 N. Y. 142, 85 N. E. 1006, 19 L.R.A.,N.S., 133. The burning of a building is not the same thing as the burning of articles in a building; and yet it is only by holding

these terms to be absolutely equivalent in meaning that the defendant can be charged with liability in this case.

"We cannot accede to the proposition of the learned Appellate Division that what this policy means 'is to insure against accident caused by fire in a building.' That is not what the contract says. Ordinarily a fire involving the burning of a building, in whole or in part, is a more serious casualty and less apt to occur than a fire which merely consumes some of its contents without burning any part of the building itself. For a given premium, an insurance company might well be willing to indemnify against an accidental injury due to the less frequent occurrence, when it would not insure as against the consequences of more ordinary fires. Such a preference is at least conceivable; and, assuming it to exist, how could the insurer evidence an intent to restrict the contract of indemnity to cases grave enough to include the ignition of the structure itself more aptly than is done by the language of the policy before us? No clearer phraseology occurs to us unless out of excessive caution a negative provision were to be added stating that the policy was not intended to cover accidental injuries caused by a mere fire in a building not consuming any portion of the edifice. In our judgment, this is precisely what it means now. If it was the purpose of the parties to enter into a contract broad enough to embrace any accidental injuries occasioned by fire, it was easy enough for them to do so. We can determine their intent only by reference to the language they saw fit to use, and that language seems to us fatal to the claim of the plaintiff.''

The holding in *Wilkinson* v. *Aetna Life Ins. Co.,* supra (the only case contra to the unanimous weight of authority), has been cited in most of the cases hereinbefore cited by us as authority for the position that we take that there is no ambiguity in this language and has in each instance been either expressly overruled or discarded as unsound. We find that the courts in the Houlihan case, the Maryland Casualty case and the Arnold case, all hereinbefore cited have expressly either overruled or refused to follow the Wilkinson case.

It seems to us too that this Wilkinson case is clearly distinguishable on the facts from the case here under consideration. In the Wilkinson case [240 Ill. 205, 88 N. E. 552], the fire originated in a barn, and the proof showed that when the firemen broke open the door leading into the barn loft they "found the straw, boxes, boards, and the interior of the loft on fire, and Wilkinson lying on the loft floor, unconscious; * * * that Wilkinson was badly burned on his hands, arms, legs, and body and had inhaled flames and smoke, from the effect of which he died within two days." Evidence to the effect that "the interior of the loft was on fire" would indicate extensive burning to the building itself, and positive evidence that the insured had inhaled flame and smoke, would well give rise to an inference that the flame and smoke came "from the burning of the building."

In the case at bar, there was no burning of the building other than the two small areas, one of which was described as being about the size of a man's hat and the other not quite so large, and there was no evidence for which even an inference could be drawn that these two small burned areas could have accounted for the extensive second and third degree burns to the insured's

back, etc.   There was no proof in the case at bar that the insured inhaled smoke and flame.

For these reasons we feel that the two lower courts were in error and the case is accordingly reversed and dismissed for the reasons hereinbefore stated.