LASTER *v.* AMERICAN NAT. INS. CO.

*(Nashville,* December Term, 1936.)

Opinion filed December 15, 1936.

SIMMONDS & BOWMAN, of Johnson City, for appellant.

PHILLIPS & HALE, of Rogersville, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a suit to recover on an ordinary life insurance policy in the sum of $2,500, insuring the life of French Laster. Complainant is the widow and beneficiary. The issue submitted to a jury and decided in favor of the complainant was whether or not the policy was in force on July 27, 1932, when the insured died. The defendant company appealed from the decree and the Court of Appeals affirmed. This court granted *certiorari* and argument has been heard.

The policy was issued August 9, 1924, and all premiums were paid until August, 1928, when the insured sent $5 to apply on the annual premium then falling due and executed a lien note for the balance of $61.20. From that time on only one or two small payments were made, but the company kept the policy alive by charging the premiums to the accumulated reserves, until August 9,

1930. At this time only $18.62 was available for application to the annual premium falling due, and the company thereupon applied this balance in purchase of a paid-up term policy, which extended the coverage until May 4, 1931, which was a year and almost three months before the insured's death. The contention of the beneficiary sustained by the chancellor's decree, affirmed by the Court of Appeals, was that the company should have previously applied the accumulated reserves to the purchase of term insurance, instead of to the extension of the ordinary life policy, as it did do, and that if the fund available had been so applied, this term policy would have extended the coverage beyond the date of the insured's death. The insistence of the company is that it was authorized to make the application of the reserves which it did make by a stipulation in the application for the policy signed by the insured, and the determination of this issue, therefore, calls for a construction of the contract of insurance as a whole, particularly the nonforfeiture and automatic premium loan provisions of the policy proper, in connection with a pertinent recital in the application therefor.

The application signed by the insured on the 10th day of July, 1924, contained (No. 13—a), the following printed recital: "I desire the Company to charge premiums in accordance with the Automatic Premium Loan Provision in the policy, if the same shall not have been paid when due." On the blank line opposite, intended for the answer, appears the word "Yes." On the second page of the policy, which bears date 9th day of August, 1924 (some four weeks after the date of the application), opposite the subhead Automatic Premium Loans, appears the following:

"If any premium or installment thereof on this policy be not paid in cash on or before the due date thereof, or within the period of grace, the Company will charge up such premium or installment and any subsequent premium or installment not paid in cash, with interest in advance at six per centum per annum to the end of the current policy year, against the then loan value of this policy as stated above, provided that such loan value be sufficient to cover such loan in addition to any existing indebtedness herein to the Company, and provided that written request therefor has been made by the insured on the Company's form at any time while there is no default in the payment of any premium hereunder."

The extended term, or nonforfeitable provision of the policy, applicable unless the insured shall have elected in writing the automatic loan plan, reads:

"This policy is automatically non-forfeitable, as follows: After premiums shall have been paid in cash to the end of the third policy year if any premium or installment thereof is not paid before the expiration of the period of grace herein allowed, and the insured has not elected in writing to have unpaid premiums charged against the loan value of the policy, the insurance hereunder will, without action on the part of the insured continue as paid up term insurance for an amount equal to the face amount of this policy, but without any loan value, as follows," etc.

It will be observed that the company, by this automatic loan provision, contracted, upon nonpayment by the insured of any premium, to charge up such premium, or any installment thereof, against the loan value of the policy, this obligation, however, being subject to two conditions, in the form of provisos: (1) That such loan

value was sufficient to cover such loan, in addition to any existing indebtedness to the company; and (2) "that written request therefor has been made by the Insured on the Company's form at any time while there is no default in payment of any premium hereunder."

The record discloses that at the time of making the last two applications of the reserves to the extension of the ordinary life policy, in the form of loans, the company undertook to transmit notice by mail to the insured, and in this connection submitted one or more note forms for his signature, but had no response; and the record further discloses that the insured had meanwhile become mentally incapacitated and was not in condition to respond, or otherwise exercise any option or ratification. The question therefore narrows to a construction of the contract, as heretofore indicated, made up of the recital quoted from the application and the Automatic Premium Loan Provision quoted from the policy.

The question is not free from difficulty. It was for this reason that the petition to this court was granted and the case set down for argument, and it has had very full and careful consideration. We think it must be conceded that the contract under consideration is not free from ambiguity. This appears, not only from the difficulty which this court recognizes, but is emphasized by the fact that learned counsel for the company take one position, and support it ably and plausibly, and an opposite view has been taken by the trial court, the Court of Appeals, and learned counsel for complainant.

In this situation the rule of construction generally recognized and repeatedly applied by this court comes into play, that whenever contracts of insurance are so framed as to be "susceptible of two interpreta-

tions differing in import, that interpretation which will sustain the claim of the policy holder and cover the loss should be adopted.'' *Laue* v. *Grand Fraternity,* 132 Tenn., 235-247, 177 S. W., 941, 944, L. R. A., 1915F, 1056; Ann. Cas., 1917A, 376; *Pacific Life Ins. Co.* v. *Galbraith,* 115 Tenn., 471, 483, 91 S. W., 204, 112 Am. St. Rep., 862. The above quotation was expressly approved in the recent case of *Stovall* v. *New York Indemnity Co.,* 157 Tenn., 301, at page 314, 8 S. W. (2d), 473, 72 A. L. R., 1368, and it is merely one statement of the rule which has been approved in many other of our decisions.

In the instant case the company insists that the answer ''Yes,'' appearing in the application signed by the insured, following the recital hereinbefore set forth, was a compliance with the condition recited in the provision from the policy already quoted that the Automatic Premium Loan clause would be given effect only when ''written request therefor has been made by the Insured on the Company's form,'' etc. On the other hand, it is insisted for the complainant that this condition recited in the policy, issued four weeks after the signing of the application, plainly contemplated and required the exercise of this election by the Insured at a date subsequent, and on a form to be specially provided therefor. It is plausibly urged that if it was the purpose, or intention of the company to have the recital in the application operate as such ''written request,'' this condition would not have been incorporated in this provision of the policy without qualification, but instead thereof, language would have been used recognizing that such ''written request'' had theretofore been made and need not, therefore, be repeated.

It must be conceded that an inconsistency appears. It

can hardly be denied that if the company had failed to treat the recital in the application as authority for giving application to the Automatic Premium Loan provision, the situation would have left open the way for the making, by the company, quite plausibly, of the insistence now made on behalf of the complainant.

We think it significant that the Automatic Loan Provision, as a whole, runs in the future tense—contemplates situations, contingencies, and performances thereafter to happen. ("If," in the future, "any premium . . . be not paid, . . . the Company will charge up," etc.) And the exception clause, parenthetically inserted—"provided that written request therefor has been made by the Insured on the Company's form"—not only, by clear implication, negatives recognition that such "written request" had been theretofore made, but quite apparently refers to action which may or may not be thereafter taken. The deduction is reasonable that the option touching this matter was left open. And, indulging the presumption, contrary to general knowledge and experience, that this average layman gave any intelligent meaning to the quoted recital in his application, referring in technical terms to a provision which had not been submitted to him, it may well be concluded that he intended only to indicate his desire that the privileges of this provision be reserved to him, subject to its terms, which called for the exercise of an election whenever the contingency should arise. "In accordance with the Automatic Premium Loan Provision," would include the stipulation for a "written request" as a condition. It is insisted this was all that was intended, or effected, by this recital.

However this may be, it appears that we have here an

illustration of a contract prepared by the insurer which is left open to construction, when it might, by the use of the simplest language and the slightest effort, have been made free from all doubt. How easy it would have been, and how natural, for the draftsman of the Automatic Premium Loan provision to have added to this paragraph the words, ''unless this request has been made in the application.''

Learned counsel for the Insurance Company invite consideration particularly of several decisions as sustaining the view they insist upon. One is *Massachusetts Mutual Life Ins. Co.* v. *Jones* (C. C. A., 4th Circuit), 44 F. (2d), 540, 542. In that case the court reversed the district court and gave judgment in favor of the company, construing a contract of insurance under facts somewhat similar to those now before us. However, the opinion fails to set forth all of the pertinent language, so that we are unable to make a comparison with respect to certain details, and when a close question of construction is involved this is important. Moreover, that case is clearly to be distinguished in that the court very plainly indicated that its construction was affected, if not controlled, by the conduct of the insured, who, with all opportunity to do so, failed to repudiate the course taken by the Insurance Company, but, to quote from that opinion, ''with full knowledge of the company's interpretation of the contract, and its action thereunder, accepted the benefits which the action taken conferred, and, upon natural principles of equity, is bound by his own acquiescence in the company's construction of the contract as fully as if he had himself initiated the program, and, by the same token, his beneficiary likewise is estopped to complain.''

 In the instant case, estoppel is suggested, but, conceding that it was unnecessary more formally to set up this defense, we think it obvious that it is not available in view of what has been said of the condition of the insured and in the absence of any convincing evidence of acquiescence or ratification on his part.

*Mayers* v. *Massachusetts Mutual Life Ins. Co.* (D. C.), 11 F. Supp., 80, is also called to our attention, but we do not find the facts to be identical with those in the case at bar, nor is the decision on the point determinative here.

Nor do we find *Missouri State Life Ins. Co.* v. *Ross,* 185 Ark., 556, 48 S. W. (2d), 230, in point. The decision in that case was rested mainly on acquiescence by the insured in the course followed by the company, and on the rule of practical construction.

For reasons already suggested, we do not find that the facts of this case call for application of these principles. We are constrained to concur with the Court of Appeals that the complainant should be given the benefit of the doubt involved in the construction of this contract and the decree of that court is affirmed.