BLUE. RIDGE INSURANCE COMPANY *v.* ROY L. HAUN ET AL.

*(Knoxville,* September Term, 1954.)

Opinion filed November 16, 1954.

Petition for Rehearing denied March 11, 1955.

AMBROSE & WILSON, KARL D. SAULPAW, JR., and EDWARD B. PHILLIPS, all of Knoxville, for petitioner Insurance Co.

JENNINGS, O'NEIL & JARVIS, PAUL E. PARKER, JENKINS & JENKINS and CHARLES MANER, all of Knoxville, for defendants.

MR. JUSTICE BURNETT delivered the opinion of the Court.

A petition for certiorari has heretofore been filed by the Insurance Company which has been granted. The case has been ably briefed and argued before this Court and we now have the matter for determination.

The question is (as stated by the Court of Appeals): "Is a towed automobile a 'trailer' within the sense of a clause excluding liability while the insured automobile 'is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company' "?

The original bill was filed by the insurance company seeking a declaratory judgment. The defendants to the suit, respondents here, are the insured and others having a claim against him by reason of an accident growing out of a state of facts wherein the insured had a "hot rod" racing automobile attached to the insured car which he was towing from Harriman to Knoxville. This "hot rod" or "racer" was owned by the insured and another and was not covered by insurance. While being towed behind the insured automobile to which it was attached by means of a tow bar the tow rod broke (thus completely disengaging it from the insured automobile), causing the "hot rod" to veer to its left and collide head-on with an approaching automobile. The result of this collision was the cause of the death of one person and seriously injuring others who were in the approaching automobile. No part of the insured automobile struck this other automobile or was involved in this collision. The "hot rod" had its own motive power and was not designated ordinarily to function as a trailer but its function was to be used as a souped up racing car.

The Chancellor held that this car which was being towed was not a "trailer" within the terms of the policy.

The insurance company appealed to the Court of Appeals and that Court affirmed the Chancellor.

It is insisted here that this case is controlled by our case of *Waddey* v. *Maryland Casualty Company*, 1937, 171 Tenn. 112, 100 S. W. (2d) 984, 986, 109 A. L. R. 654. The Court of Appeals distinguished the instant case from the Waddey case, supra. In the Waddey case the liability policy in effect on the automobile provided that it did not cover the insured automobile while the latter was being used for propelling any trailer or any vehicle used as a trailer, and the insured permitted two small boys to attach to the car a homemade wagon constructed from the frame of a small buggy about 5 feet long, 4 feet wide, and approximately 2 feet above the ground, equipped with four old T-Model Ford wheels with no tires, having no bed or seat except planks extending from the front to the back axle, and an accident happened when the insured, on reaching the top of a hill, instead of stopping the car, continued to drive down grade, as a consequence of which the boy who was riding on the wagon lost control thereof and crashed into a telephone pole. This Court held that the insured automobile was being used to propel a trailer within the meaning of the policy and that during the period the wagon was attached as a trailer the automobile was not covered by the policy. This Court in the Waddey case adopted as the definition of a "trailer" the definition as given by Webster's International Dictionary to wit:

" 'A vehicle or one in a succession of vehicles hauled, usually, by some other vehicle.' " The Waddey case likewise gives the definition of a vehicle which clearly fits the souped up car being towed in this case. The obvious question for our determination is whether or not under

the facts of this case this souped up "hot rod" was a "trailer".

In the Waddey case the insurance policy excluded from liability:

"'(e) being used for towing or propelling any trailer or any vehicle used as a trailer (incidental assistance to a stranded automobile on the road permitted) unless privilege for such use is specified in the Statements and/or unless such trailer is listed in Statements: nor in any event unless proper premium for such privilege is in the Statements set forth.'"

Under the policy in the instant case the following provision is included excluding coverage:

"(c) under coverages a and b, while the automobile is used for the towing of any trailer owned or leased by the insured and not covered by like insurance in the company * * *.''

Of course there is the obvious difference in the two exclusion provisions of the two policies. In the Waddey policy the additional language "'or any vehicle used as a trailer'" was used which is not in the instant case. It was for this reason that the Court of Appeals distinguished the instant case from the Waddey case, that is, because of the use of the last phrase above quoted from the exclusion clause in the Waddey case. The Court of Appeals reasons that in view of this fact and in view of the ordinary accepted idea of what a trailer is and of the definition of a trailer as taken from 60 S. J. S., Motor Vehicles, Sec. 8, p. 118, to wit:

"A trailer is a separate vehicle, which is not driven or propelled by its own power, but which is drawn by some independent power; a vehicle without motive power, designed to carry property or passengers

wholly on its own structure, and to be drawn by a motor vehicle.''

Thus the Court of Appeals reasons that there is an ambiguity ''in the use of the word 'trailer', which was of the insurer's own making, thus calling into play two well known rules of construction: (1) that all ambiguities will be resolved in favor of the insured, and (2) that all limitations of liability are to be construed strongly against the insurer.'' Citing authorities. And thus for this reason that court held that there was no exclusion under the instant policy.

■ We have heard able arguments and read several times the many fine briefs and have given the matter considerable independent investigation as well as thought. After doing so we feel that this case is controlled by the Waddey case, supra. In the Waddey case a ''trailer'' is there defined and this definition fully covers the facts of the instant case. Thus where we have the word ''trailer'' defined by judicial pronouncement of this Court, there being no later judicial or legislative definition of a ''trailer'', it is the duty of this Court to follow that decision. The result is that the two lower courts must be reversed and a declaration made by this Court that under the facts of the instant case the policy of insurance did not cover the automobile while this ''hot rod'' was attached thereto.

We have examined and read many cases from other jurisdictions on the subject as well as a well written annotation appearing in 31 A. L. R. Second Series, 298 through 315. As said there (all of the cases that could be found are there collected) the cases ''are not readily reducible to a statement of general rules.''

The lower courts are reversed for the reasons herein set forth.

NEIL, Chief Justice (dissenting).

I respectfully dissent from the majority opinion which relieves the plaintiff in error, Insurance Company, from any and all liability for damages resulting from the negligence of the policyholder.

The question of whether or not the vehicle that was being towed by the defendant's automobile is a trailer is not a factual issue. All parties in interest concede that *it was not a trailer,* but was an automobile. In the light of this admitted fact the case should not be decided upon a mere dictionary definition as was the case in *Waddey* v. *Maryland Cas. Co.,* 171 Tenn. 112, 100 S. W. (2d) 984, 109 A. L. R. 654.

It is further conceded by the majority opinion that the policy provision, upon which the insurance company relies as relieving it from liability, is ambiguous. This being the case there can be no serious dispute as to the correctness of the Court of Appeals' opinion, which reads as follows:

"But if there be any ambiguity in the use of the word 'trailer', this was of the insurer's own making, thus calling into play two well known rules of construction: (1) that all ambiguities will be resolved in favor of the insured, and (2) that all limitations of liability are to be construed strongly against the insurer. *Laster* v. *American Nat. Ins. Co.,* 170 Tenn. 689, 98 S W. 2d 1068, 108 A. L. R. 878; *Hahn* v. *Home Life Ins. Co.,* 169 Tenn. 232, 84 S. W. 2d 361; *Universal Life Ins. Co* v. *Lillard,* 190 Tenn. 111, 228 S. W. 2d 79; *National Bank of Commerce* v. *New York Life Ins. Co.,* 181 Tenn. 299, 181 S. W. 2d 151."

The exclusion in the instant case could have been made certain beyond any doubt by the use of simple words.

It is wrong, in my humble opinion, to allow this insurance company to escape liability by invoking an ambiguous phrase, which was of the company's own making. For the foregoing reasons I am compelled to disagree with the majority.

## On Petition to Rehear.

BURNETT, Justice.

In the first place we have a motion or a protest and supporting brief that the order on our original opinion herein should remand the cause to the Chancery Court for further proof. It is argued that the original opinion herein does not dispose of all necessary matters in this suit. We cannot agree to this request and feel that the arguments in support thereof are wholly fallacious. The reason that we say this is that the original opinion was to the effect that the "hot-rod" herein was a trailer under the facts of this case and under the law in this state as announced in the Waddey case. Under the exclusions in the policy of the instant case this being a trailer then there was no liability under the policy for this accident. This being true clearly there was no necessity for remand, a clear declaration was made and this was an end to the lawsuit.

Following what has been said above in reference to the order herein, the appellees filed a very courteous, forceful and dignified petition to rehear. This petition contained, to a large extent, the same argument (in many instances the identical language) that was made in the motion that the order remand the cause to the lower court. The petition likewise, to a great extent, was a reargument of an argument made in the original briefs in reply to the petition for certiorari and in oral argument made in open court. It is true though that the argument now on ques-

tions there made were amplified to a great extent. In addition to this petition to rehear and supporting briefs other parties have filed herein a petition to intervene with a supporting brief and argument in favor of the petition to rehear. These parties it seems by the intervening petition are in a similar position with reference to other insurance contracts as are the appellees herein. Their brief in support of the petition to rehear herein is likewise a duplication, though stated in entirely different words, of the argument made by the appellees herein which was made by them in their original reply to the petition for certiorari and in the Court of Appeals. Then too, we have now had an amended petition to rehear based on the Tennessee Financial Responsibility Law— a question which apparently (certainly it is not shown anywhere in the record) was never made or brought to the attention of the lower courts. We have read all of these briefs, etc., some three or four times and have spent several days considering this matter and now have it for disposition.

In the first place in these various arguments to rehear the cause the parties all seem to hang on to and insist upon certain statements made in the dissenting opinion herein. It is said in the dissenting opinion that: "All parties in interest concede that *it was not a trailer, but was an automobile.*" It seems to us that it is so obvious that this statement is fallacious that we in our original opinion did not attempt of course to say anything about this question and we did not comment on it. Of course the "hot-rod" set out by itself might be an automobile and not a trailer but the thing that determines whether or not it is a trailer is the manner in which it was being used under the facts of the instant case that is the determinative answer, not what it is alone when not at-

tached to the automobile. This seems so clear and unanswerable to us that we made no comment on the question and would not now except for the insistences made. Second, it is said in the dissenting opinion that the majority opinion admits that the insurance contract herein is ambiguous. This statement is certainly a misconception of what the majority opinion says and holds. If we thought that the insurance contract was ambiguous of course the result as insisted upon in the dissenting opinion would have been reached for the reasons and the authorities therein cited, being those cited by the Court of Appeals. In our judgment, and for reasons hereinafter again pointed out, we do not think the insurance contract is ambiguous. And again it is said and very strongly argued in the petition to rehear that all the insurance company had to do could have "been made certain beyond any doubt by the use of simple words." Of course that is a self-evident fact. We of the majority think that the words used in the contract are self-evident and of far better use in drawing a contract than attempting to mention "hot-rods", made up wagons, and what not that might be trailers under the authority of the Waddey case in the State of Tennessee. We of the majority, for obvious reasons, feel that the rule of stare decisis is one of paramount importance in the construction of insurance contracts. Our power, that is the power of this Court, to overrule a former decision should be sparingly exercised by the court and only exercised when the reason is compelling. *J. T. Fargason Co.* v. *Ball,* 128 Tenn. 137, 141, 142, 159 S. W. 221, 50 L. R. A., N. S., 51; *Hall* v. *Skidmore,* 180 Tenn. 23, 29, 171 S. W. (2d) 274.

Here we have a clear definition adopted by this Court (it is true that at the time of its adoption the Court was made up of a different personnel from that at the pres-

ent) of what a trailer is. We see no compelling reason or any other reason now why we could adopt a better definition. This is true, too, when we consider the fact that the dictionaries from the present time back beyond the decision in the Waddey case all adopt the same definition as that applied by this Court and adopted as its definition of a trailer. Since the original opinion was handed down herein, Vol. 87 of C. J. S. has been placed on our shelves. At page 885 of 87 C. J. S. a trailer is defined thus:

"The word 'trailer' is defined generally as meaning one who or that which trails. The term is applied to a variety of vehicles, and in the motor vehicle law a trailer is a separate vehicle which is not driven or propelled by its own power, but which, in order to be useful, must be attached to, and become a part of, another vehicle, * * *."

Thus even the definitions adopted by the courts generally are not far from that as adopted by this Court. It is true that there are some cases from other jurisdictions that apply a different definition to a trailer. Should we though leave the definition of a trailer as adopted by this Court (when there is no compelling reason) and adopt the definition as used by a court of another state? To ask the question is to answer it.

██ Under the heading *"Exclusions"* this policy does not apply:

"(c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; * * *."

Then in this same paragraph appears the opposite statement, that is, that if the trailer is covered by insurance in this company and is attached to an automobile which

is not covered then it is excluded. But the policy did cover the described automobile and also Section IV(a),

"(2) Utility Trailer—under coverages A, B and C, a trailer not so described, if designed for use with a private passenger automobile, if not being used with another type automobile and if not a home, office, store, display or passenger trailer; * * *"

There was no insurance coverage under this policy of any kind of a trailer other than a "utility trailer" above mentioned. The argument is made now by the appellees on their petition to rehear and by the requested intervenors that under the policy in consideration if the "hot-rod" is a trailer and is being pulled by the insured automobile it is covered by this policy of insurance if the trailer "is not a (1) home, (2) office, (3) store, or (4) display or passenger trailer." They say that this stock car or "hot-rod" or what have you in the instant case is not a home, office, store, display or passenger trailer and then since it is not it must be something within the insuring provisions of Section IV, subsection (a), (2), but nowhere in the arguments of the petition to rehear or in the intervening petition is it claimed that this "hot-rod" is a utility trailer. Webster's New International Dictionary defines "utility"—

"a useful thing, factor, implement, etc.; esp., a tool or device used as an adjunct to a more important machine."

It seems to us that this definition clearly fits what a utility trailer is. This is what the ordinary person would understand a utility trailer to be, something that is pulled on the back of the automobile and is of some use to the major project. Of course in the definitions of the word utility there are various other definitions given in the dictionary but this one is the only one that is at all applicable to the

instant case. Clearly then it cannot be said and it is not argued that the ''hot-rod'' in the instant case was a utility trailer. The argument simply is made that since it is not one of those five enumerated things then it is included in the contract of insurance. We quoted first above as we did in our original opinion the exclusion. These exclusions unqualifiedly and unambiguously say that any trailer is excluded. Of course prior to this exclusion there is the inclusion of a utility trailer which is covered.

The petitioners now seek to introduce the manual of automobile insurance where on page 137, utility trailers are defined thus by this manual.

''The insurance afforded by the policy with respect to a private passenger automobile also applies to a trailer, commonly known as a utility trailer, designed for use with a private passenger automobile but not a home, office, store, display or passenger trailer, without premium charge and without specific description of the trailer, except that coverage does not apply when such trailer is being used with other than a private passenger automobile or with a private passenger automobile owned or hired by the insured (named or additional) and not covered by like insurance in the company.''

This is merely referred to as a textbook or decisions on the question might be and not as evidence. But it seems to us that this description of a utility trailer is of no help to the petitioners herein. In interpreting these contracts the general rule has been, insofar as we know, that ''the Court has no alternative and must give effect to the intention expressed by the language used, whatever may be thought about the harshness of the result, where the question is merely one of interpretation and there is no

charge of accident, fraud or mistake." *Bailey & Co.* v. *Union Planters Title Guaranty Co.,* 33 Tenn. App. 439, 451, 232 S. W. (2d) 309, 314.

Again the argument is that by the inclusion of the exclusion, home, office, store, etc., Sec. IV (2d) clause above copied that the insurance company has "precluded itself from relying upon any general definition of what the word 'trailer' is". We cannot accede to this reasoning because by these mentioned things it does not attempt to be an enumeration of what trailers are excluded but to the contrary it is a description, explanation and definition of a utility trailer by saying what it is not. In other words when the company says that they cover utility trailers then they know that very frequently and under even the definition as given above by Webster's Dictionary of utility that trailers of the kind of home, office, store, etc., as here enumerated could very easily be classed as a utility. Thus the draftsman of the insurance contract says that these common things are not utility trailers, merely leaving then other things that would come within the definition as a utility trailer and be covered under the terms of the policy.

Thus as we see it the "hot-rod" herein which was attached to the insured automobile, under the definition given in the Waddey case, and which is the law of Tennessee is a trailer and therefore not covered by the policy in the instant case. This conclusion then only and clearly warrants that the decree should be drawn dismissing the present lawsuit and taxing the original defendants, appellees here, with costs.

We now come to a consideration of whether or not the Tennessee Financial Responsibility law changes the result in any particular.

■ This law was first enacted in Tennessee and is Chapter 75 of the Public Acts of 1949. A full discussion of this Act and analysis of the Act ''Motor Vehicle Financial Responsibility Act'' is found in 21 Tenn. Law Rev., p. 342 et seq. The Legislature of 1951 repealed the Act, Chapter 75 of the Public Acts of 1949 last above referred to and enacted in its place Chapter 206 of the Public Acts of 1951 which is codified under Section 2715.49 through 2715.68. The discussion of the repealed act is very helpful toward the concise review of the Act now in question. As far as the instant case is concerned the present act does not operate any differently from the Act of 1949. As we see it this Act though has no effect upon the case at Bar. Our Act is not a compulsory insurance law or does not provide for absolute liability on the part of the insurance companies in connection with automobile liability policies as does the New Jersey Act [N. J. S. A. 39:6—1 et seq., now 39:6—23 et seq.] referred to in *United States Casualty Co.* v. *Timmerman,* 118 N. J. Eq. 563, 180 A. 629, which is cited and relied on by the petitioner. In these liability policies which are carried through legal compulsion the damage caused in an automobile operation, the carriers of insurance in such states as New Jersey are absolutely liable for a resulting loss. See *Brodsky* v. *Motorists' Casualty Ins. Co.,* 114 N. J. L. 154, 176 A. 143; *Woloshin* v. *Century Indemnity Co.,* 116 N. J. L. 577, 186 A. 44. The Tennessee Act does not have this effect.

■ The New Jersey responsibility law provides that the policy issued pursuant to it shall be noncancellable except after 10 days' written notice to the Commissioner of Vehicles, and further provides that the liability of the insurance company should become absolute thereunder when loss or damage covered by the policy occurs as is illustrated by the two cases last above cited. Our Act

does not contain any such provision in reference to the liability of the insurance company under the policy as issued herein. Our Act has the effect of causing people to insure themselves against liability resulting from accidents but does not make it compulsory for us to do so as in those States requiring compulsory insurance. Section 8 in the policy in the instant case is a standard provision so that the policy printed may be in conformity and its conditions and provisions of law of every State wherein the statute requires compulsory insurance. If a State has compulsory insurance statutes then the provision as contained in Section 8 of this policy and provisions for noncancellation become absolute on certain conditions in those States having compulsory insurance and like provisions in their statutes. We not having such provisions in our statute the provision in the policy has no effect herein.

This case has been of great interest to us. We have spent several days in reading the excellent briefs and arguments herein and in doing quite an independent investigation on our own behalf in trying in every way that we can to be absolutely correct in this decision. We must keep in mind at all times that the insurance company herein is a paid carrier of certain risks of the insured and that these risks that it is paid to carry are those as specified and set forth in the contract between Haun and the Company. In our view of the matter this contract has been breached by Haun and under the specific provisions of the policy an accident occurring as did this one under the facts of this case, the company does not cover such an accident. For the reasons heretofore expressed in this opinion we must overrule the petition to rehear and affirm and reiterate our original opinion. The judgment will go down reversing the lower courts and holding

that the "hot-rod" herein was a trailer and therefore liability under the policy was excluded. This is a full declaration of rights as is sought by the action herein and there is no necessity for any remand for any purpose. The costs of the cause will be taxed against the defendants as we can see no reason why any exception should be made in the instant case.