# Richmond

SAFEGUARD INSURANCE COMPANY v. H. U. JUSTICE, JR.

December 3, 1962.

Record No. 5463.

Present, All the Justices.

Claude D. Minor and Angus H. Macaulay, Jr. (Denny, Valentine & Davenport, on brief), for the plaintiff in error.

L. A. Belcher (Elmore & Belcher, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

H. U. Justice, Jr., herein called plaintiff, instituted an action against Safeguard Insurance Company, sometimes called defendant, seeking a judgment for $4,000 with interests and costs. Plaintiff alleged in his motion for judgment that on December 4, 1959, he secured a judgment for that amount against Leamond E. Lane in an action brought against Lane and others for property damage he sustained

due to the negligent operation of an automobile Lane was driving with the permission of the owner of the car, which was covered by a "combination automobile policy" issued by Safeguard to Eugene Adams, the owner; that the policy was in full force and effect at the time of the accident; that an execution on the judgment was returned marked "no effects", and that Safeguard was obligated to pay plaintiff the amount sued for by virtue of the terms of its policy of insurance. Defendant timely filed its grounds of defense.

The case was tried on a stipulation of facts without the intervention of a jury. The trial court, by order entered August 1, 1961, rendered judgment in favor of plaintiff against Safeguard for $4,000 with interest from December 4, 1959, the date plaintiff secured a judgment against Lane, together with costs of $17.25 and also costs expended by plaintiff to enforce collection of the judgment from Safeguard. The entry of this order gave rise to this appeal.

The stipulation of facts is brief. The place of the accident which caused damages to plaintiff's vehicle is not stated therein. However, defendant alleged in its grounds of defense that the accident occurred on U. S. Highway No. 301 near Stony Creek, Virginia. On March 28, 1959, Leamond E. Lane was operating a "1949-50" Ford sedan with the permission of Eugene Adams, the owner. Adams was in the car and they were en route to North Carolina where Lane intended to participate in a stock car race. The racing car intended to be used was a 1939 Ford coupe, equipped with a Mercury engine and racing pistons. It was being towed by the automobile which Lane was driving when it became disconnected, crossed the median strip of the highway and collided with plaintiff's vehicle.

The "racer" was designed or altered exclusively for racing or exhibition purposes and could not be legally operated under its own power on the highways of this Commonwealth since neither a title certificate nor a registration card had been obtained for it. Moreover, the "racer" had not been inspected. However, it was a vehicle which was equipped with motive power and was capable of being operated under its own power on the highways or elsewhere. It was not designed for being towed by a motor vehicle, but like any other automobile it had that capability.

It was further stipulated that Safeguard issued to Eugene Adams its assigned risk "combination automobile policy" insuring his car that Lane was driving with the permission of Adams "to the limits of liability, exclusions, conditions and other terms of the said policy", and that it was in force and effect at the time of the accident.

It is not disputed that Lane was an additional insured under the policy, because he was driving the car with the named insured's permission. Safeguard, however, contends that coverage on the insured vehicle was suspended at the time of the accident since it was being used to tow a "trailer" not insured by it. The contract provided:

"This policy does not apply:

\*  \*  \*  \*  \*  \*  \*

"(c) Under coverages A and B, [bodily injury and property damage liability] while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company;".

Defendant has resolved its assignments of error into this sole question. "Is an uninsured racer automobile, which is being towed behind an insured private passenger automobile, a trailer within the meaning of the term 'trailer' as used in the exclusion clause of the policy of automobile liability insurance issued by the defendant in this case, which policy plaintiff claims affords coverage as to his loss and damage?" The precise question is one of first impression for us.

Defendant relies heavily upon *Blue Ridge Insurance Co. v. Haun,* 197 Tenn. 527, 276 S. W. 2d 711. The majority opinion does support its contention. There the insurance carrier filed a bill seeking a declaratory judgment as to liability under a policy of automobile liability insurance it had issued the insured. The facts are quite similar to those in the present case. There was an uninsured racing car being towed by the insured automobile. The towbar broke, causing the racing car to veer to the left side of the road and collide with an approaching vehicle. The policy contained an exclusion clause substantially the same as that in "(c)", *supra,* of the policy involved in the case at bar. The chancellor found that the racing car was not a "trailer" within the terms of the policy. The insurance carrier appealed to the Court of Appeals and that court affirmed the chancellor. The Supreme Court granted *certiorari,* reversed the decisions of the lower courts and held that the "hot rod" automobile was a "trailer" and therefore liability under the policy was excluded. Chief Justice Neil dissented. In an opinion overruling a petition to rehear, the original opinion was affirmed.

The majority opinion stated that the case was controlled by

*Waddey* v. *Maryland Casualty Co.*, 171 Tenn. 112, 100 S.W. 2d 984, 109 A. L. R. 654. In that case the exclusion clause of the policy provided that if the insured automobile was "being used for towing or propelling any trailer or any vehicle used as a trailer * * *" coverage was suspended. The sole question presented was whether the home-made wagon being propelled "was a trailer or a vehicle used as a trailer". The court adopted the definition of a "trailer" as stated in Webster's International Dictionary: " 'A vehicle or one in a succession of vehicles hauled, usually, by some other vehicle.' " The majority opinion in the *Haun* case stated that this definition covered the facts in the case and that since there was no later judicial or legislative definition of a "trailer", it was the duty of the court to follow that decision.

Chief Justice Neil dissented on the grounds that the automobile being towed was not a "trailer" and that the case should not be decided on a mere dictionary definition as was the situation in the *Waddey* case. He was of opinion that the use of the word "trailer" in the policy was ambiguous and should therefore be construed in favor of the insured.

The majority opinion pointed out the reasons why the Court of Appeals held that there was no exclusion under the policy. The Court of Appeals adopted the definition of a "trailer" as stated in 60 C. J. S., Motor Vehicles, § 8, p. 118, which reads:

"A trailer is a separate vehicle, which is not driven or propelled by its own power, but which is drawn by some independent power; a vehicle without motive power, designed to carry property or passengers wholly on its own structure, and to be drawn by a motor vehicle. * * *"

The *Haun* case was distinguished from the *Waddey* case in that the exclusion provisions in the two policies differed. In the *Waddey* case the exclusion provisions of the policy contained the additional words italicized "being used for towing or propelling any trailer *or any other vehicle used as a trailer*". In view of this difference and in view of the definition of a "trailer" as above quoted and the ordinary accepted meaning of a "trailer", the Court of Appeals concluded that there was an ambiguity in the use of the word "trailer", which required, under the rules of construction, that such ambiguity be resolved in favor of the insured and also that all limitations of liability be construed against the insurer.

The definition of a "trailer" is not necessarily controlled by that given in the Motor Vehicle Code. However, some jurisdictions have

resorted to the Motor Vehicle Code for such definition for want of a better one. The definition within the meaning of the insurance contract is paramount unless prohibited by statute. Section 46.1-1(33), Code 1950, defines "trailer" as "Every vehicle *without motive power* designed for carrying property or passengers wholly on its own structure and for being drawn by a motor vehicle." (Emphasis supplied.) Clearly, under this definition we would have no difficulty in holding that the towed racing automobile in question was not a "trailer".

In *Littlefield* v. *Insurance Co.*, 86 N. H. 87, 163 A. 420, the insurance policy provided that the insured automobile should not be used "for towing or propelling any trailer or other vehicle used as a trailer." The contention that the vehicle was not to be used for towing purposes was rejected. The court stated that "the language of the policy forbids the use of the car as motive power for a 'trailer' ". It then went on to say:

"The word 'trailer' has a definite and well understood meaning in popular usage, and this meaning is embodied in the statutory definition which is as follows: ' "Trailer", any vehicle without motive power designed for carrying property or passengers wholly on its own structure and for being drawn by a self-propelled vehicle, * * *'. Obviously a temporarily disabled automobile does not come within this definition and we, therefore, conclude that the use of the car in question at the time of the accident for the purpose of towing such a disabled automobile to a repair shop did not come within the exclusions of the policy."

In *Maryland Casualty Co.* v. *Aguayo*, 29 F. Supp. 561, the automobile liability policy, which was issued in California, had an exclusion clause similar to the one in the present case. The court turned to the California Motor Vehicle Code for definitions of trailer and semi-trailer in deciding what the parties meant by the terms used in the policy. A concrete mixer was attached to the insured truck and was towed to its place of destination. There, while the mixer was still attached, Ernesto Padilla sustained an injury to his left hand when the end gate of the truck fell. The court held that the exclusionary provisions in the policy did not apply because the mixer was stationary and not being towed by the truck at the time of the accident. The court also said:

"It is the opinion of this court that the concrete mixer described in the Stipulation of Facts is not a 'trailer' or a 'semi-trailer' within the

meaning of the exclusionary clause of the policy. It is therefore not excluded." 29 F. Supp. at p. 564.

Defendant cites various definitions of a "trailer". One of the authorities referred to is 87 C. J. S., p. 885, cited in the opinion overruling the petition to rehear in the *Haun* case, *supra,* which reads:

"The word trailer is defined generally as meaning one who or that which trails. The term is applied to a variety of vehicles, and in the motor vehicle law a trailer is a separate vehicle which is not driven or propelled by its own power, but which in order to be useful, must be attached to, and become a part of, another vehicle, * * *."

Our search has revealed that the authorities are by no means uniform in defining the word "trailer".

As has been stated the question for us to decide is whether the racing automobile which was being towed is a "trailer" within the meaning of the exclusion clause of the policy.

Defendant argues that the racing car was both an automobile and a "trailer" at the time of the accident. With this contention we do not agree.

The racing vehicle was capable of being operated on its own motive power. It was not necessary for it to be attached to and become a part of another vehicle to be useful. It was designed or altered to be used as a racing car and not for the purpose of carrying passengers or property.

The policy covers the protection sought unless it is excluded by its terms. There is nothing in the policy that says a towed automobile is a "trailer". The insurer, by the use of appropriate words in the policy, could have said so. A towed automobile is not considered a "trailer" in common parlance. To adopt defendant's construction would be to say that every towed automobile is a "trailer". We are told that until recent years the exclusion provision in standard policies, read thus: "being used for towing or propelling any trailer or any vehicle used as a trailer", as was the situation in the *Waddey* case, *supra.* When the contract or policy was revised, the phrase "or any vehicle used as a trailer" was eliminated and such does not appear in the policy here involved. We think that the word "trailer" as used in the exclusionary clause of the policy is ambiguous. Under such circumstances, it is our duty to construe the policy against the insurer, who drafted it. *Dressler, Adm'x* v. *Insurance Co.,* 200 Va. 689, 692, 107 S. E. 2d 406; *Insurance Company* v. *Dollins,* 201 Va. 73, 77, 109 S. E. 2d 405. Applying this principle, we find that the towed racing automobile is not a "trailer" within the meaning of the exclusionary

clause of the policy and that the policy affords the plaintiff coverage for the damages sought.

For the reasons stated, the judgment appealed from is

*Affirmed.*