**Dana Davis ERWIN**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

**Civ. A. No. 4160.**

United States District Court
E. D. Tennessee, S. D.

July 13, 1964.

On Motion for New Trial
Aug. 4, 1964.

Berke & Berke, Chattanooga, Tenn., for plaintiff.

Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for defendant.

DARR, District Judge.

On July 6, 1962, Mr. John M. Folts, a resident of Waterford, Wisconsin, was making a trip south in his car and while in Hamilton County, Tennessee, collided with the back of a car driven by the plaintiff, Mrs. Dana Davis Erwin [Mrs. Erwin], injuring her.

Mrs. Erwin brought a suit for damages against Mr. Folts in the Circuit Court of Hamilton County, Tennessee. Process was issued and substitute service was sought under Tennessee law through the Secretary of State. A letter containing the process went to Mr. Folts at his home address and he refused to accept the letter which was returned to the Secretary of State and by him transmitted to the court. This constituted good service in Tennessee.

Thereafter, on May 17, 1963, Mrs. Erwin obtained a default judgment against John M. Folts for $9,750.00 for personal injuries and $600.00 for property damage. This judgment became final.

The present suit was instituted against the State Farm Mutual Insurance Company [State Farm] in the Circuit Court of Hamilton County, Tennessee. On August 9, 1963, it was removed to this Court.

and seeks to recover from State Farm the amount of said judgment with interest and penalty.

The initial pleading charges that Mr. Folts had an automobile liability insurance policy with State Farm providing coverage at the time Mrs. Erwin was injured; that Mr. Folts declined to pay the judgment; and that Mrs. Erwin is a third party beneficiary under the policy entitled to collect the amount of the judgment with interest and penalty.

The gist of the answer made by State Farm is that the insured, Mr. Folts, breached the insurance contract by failing to notify it of the suit instituted by Mrs. Erwin and failing to transmit any suit papers; that, in fact, State Farm did not know anything about the damage suit resulting in the judgment herein sued upon until about July 15, 1963, some ten days before the suit at bar was begun.

Mrs. Erwin and State Farm have each filed a motion for a summary judgment. The decision is to be made upon the pleadings, the deposition of John D. Lambert, Chief Revocation Examiner for the Financial Responsibility Division, Department of Safety of the State of Tennessee, the answers of State Farm to the requests for admissions made by Mrs. Erwin and the admissions made by the parties in a pre-trial conference. There appears to be no dispute of the facts concerning the issues made. There are two questions:

1. Did the failure of Mr. Folts to notify State Farm that he had been served with suit papers constitute a material breach of the policy contract?

2. Do the admitted facts place liability upon State Farm under the provisions of the Tennessee law concerning the financial responsibility of the owners or operators of motor vehicles?

1. The first question does not seem to be troublesome. In fact, the attorneys for Mrs. Erwin practically admit that the failure of Mr. Folts to give notice of the suit would be a material breach of the policy contract exonerating State Farm from liability.

As this policy was issued and delivered in the State of Wisconsin, the law of Wisconsin would apply to this first question. The Wisconsin decisional law seems to go along with the law in all the states. So far as can be found, the general rule is that a failure to comply with the terms of a liability policy in giving notice of a suit being instituted against the insured constitutes a material breach of the contract, particularly if it is shown that the insurance company had been prejudiced thereby. Heimlich v. Kees Appliance Company, 256 Wis. 356, 41 N.W.2d 359; American Insurance Co. v. Rural Mutual Cas. Ins. Co., 11 Wis.2d 405, 105 N.W.2d 798; Stippich v. Morrison, 12 Wis.2d 331, 107 N.W.2d 125; Campbell v. Continental Casualty Co., 170 F.8d 669, 6 A.L.R.2d 655 (8 Cir. 1948); Appleman's Insurance Law and Practice, Vol. 8, Section 4732, pages 7–8; 7 Am. Jur.2d, Automobile Insurance, Section 185; Jamison v. New Amsterdam Casualty Co., 36 Tenn.App. 267, 254 S.W.2d 353 (1952); Rural Education Assn., Inc. v. American Fire & Casualty Co., 207 F.2d 596 (Sixth Circuit, 1953).

It is clear that State Farm was prejudiced by the failure of Mr. Folts to notify it relative to the damage suit. State Farm was precluded from making a defense as to liability and a defense as to the amount.

It might be added that the fact Mr. Folts declined to receive the letter from the Secretary of State notifying him of the suit in the state court places no fault on State Farm and did not render ineffective the policy contract requiring the insured to give notice of the bringing of the suit. Also the fact that State Farm investigated the accident and knew that Mrs. Erwin had a claim did not excuse the requirement in the policy that the insured must notify the insurer of the institution of a damage suit.

There could be no recovery on the state judgment in favor of Mrs. Erwin unless

there is liability against State Farm under the Tennessee Financial Responsibility Act.

2. The second question as to whether State Farm should be required to pay the judgment obtained against Mr. Folts by reason of the provisions of the Tennessee Financial Responsibility Act requires careful consideration.

The Tennessee Financial Responsibility Act is Chapter 12, Title 59 of the Tennessee Code Annotated as found in Vol. 10 in the 1963 Cumulative Supplement [Pocket Part].

A number of states, perhaps all of them, now have statutes requiring owners and operators of motor vehicles to have certain financial responsibility or security. Some of the statutes require proof of financial responsibility as a condition of granting driver's license, some have the same requirement as a condition for the registration of a motor vehicle. In some states the statutes require proof of financial responsibility after a judgment has been rendered and not paid and upon failure to comply sanctions are imposed. Some states require security to be furnished after the first accident for the payment of any judgment that may be obtained and also proof of financial responsibility for the future. Upon failure to comply with either or both requirements the offender is penalized.

The Tennessee Financial Responsibility Act is of. the "after-accident" type. The Act applies to an uninsured or inadequately insured owner or operator of a motor vehicle who is involved in a first accident resulting in bodily injury or death of a person or damage to property. The Act requires such person within a given time after the accident to deposit security with the Department of Safety in an amount estimated to pay any judgment that might be obtained by reason of the accident, such amount to be fixed by the Commissioner of the Department of Safety, to be not less than five hundred ($500) dollars. The Act further requires such a motorist to furnish proof of financial responsibility for prospective liability in the manner prescribed by the Act. If such motorist fails to comply with the Act, his license and registration are revoked and he can no longer drive a motor vehicle in Tennessee unless he is reinstated in the manner the Act provides. Tennessee Code Annotated, sections 59–1204, 59–1220 and 59–1212.

There are a number of exceptions to the requirements of the statutes as above recited and the exception applicable here reads as follows:

"The requirements of this chapter in regard to the requirement of security and revocation shall not apply:

"(a) To the operator or owner if the owner had in effect at the time of the accident an automobile liability policy or bond with respect to the vehicle involved in the accident * * *." Section 59–1205, Tennessee Code Annotated.

The next section of Tennessee Code Annotated, 59–1206, sets out the requirements as to the policy or bond which would exempt the person having the accident from giving security or suffering revocation. The policy must be in the amount of ten thousand ($10,000) dollars because of bodily injury to or death of one (1) person in any one (1) accident, and subject to a limit of not less than twenty thousand ($20,000) dollars because of bodily injury or death of two (2) or more persons in any one (1) accident and subject to a limit of not less than five thousand ($5,000) dollars because of damage to personal property. This section also sets out that if the vehicle is registered elsewhere than in this state at the effective date of the policy, the insurance company issuing the policy must be authorized to do business in this state; otherwise a power of attorney must be issued whereby service may be had.

At the time of the accident Mr. Folts had a policy with State Farm, which was in full effect, covering the vehicle in question, and was in the amount required by statute. State Farm was authorized to do business in Tennessee. This was Mr. Folts' first accident in Tennessee.

Thus Mr. Folts was and is exempt from the requirements of the Act "in regard to the requirement of security and revocation" after an accident under the provisions of section 59–1205, T.C.A., above quoted.

Mrs. Erwin does not insist, at least not seriously, that the policy which Mr. Folts had with State Farm at the time of the accident was a "certified policy" under the Act. The provisions setting up a so-called certified motor vehicle liability policy are found at sections 59–1220, 59–1221 and 59–1222. The so-called certified policy is a way of proof for financial responsibility as required by section 59–1204, T.C.A.

Section 59–1223 provides that the words "motor vehicle liability policy" as used in this Chapter 12 mean a certified policy as defined in the sections heretofore cited. Therefore, the provisions at section 59–1223(f) (1) for absolute liability under a certified policy have no bearing on the State Farm policy issued to Mr. Folts before the accident.

To understand Mrs. Erwin's reasons for claiming that State Farm is bound to pay the judgment obtained against Mr. Folts in the state court, a brief summary of the undisputed facts must be made.

Within the time required by the statute Mr. Folts made a report of the accident to the Department of Safety of Tennessee on a form known as SR–1 in which he gave a description of the accident and the parties involved, stated that he had a liability policy with State Farm in effect at the time of the accident in the amount and in accord with the Act as specified at section 59–1206, T.C.A. There was attached to the accident report made by Mr. Folts on Form SR–1 the Tennessee Form SR–21 which appears to be arranged for the insurer to fill out and execute. On the back side of this SR–21 there are six inquiries to be checked. Leaving the inquiries unchecked means that the policy was in the amount required by the Act and was in force at the time of the accident. The SR–21 in the record, attached to SR–1,

executed by Mr. Folts, is in blank. But in the request for admissions made by Mrs. Erwin to State Farm, it admits: "* * * a form 'SR 1' was filed with the Department of Safety, Financial Responsibility Division for the State of Tennessee, which form was signed by John M. Folts, and attached to form 'SR 1' was a form 'SR 21' which was signed by a representative of the defendant."

Mr. Lambert explained in his deposition that his Department now uses what he calls the "negative approach" to make verifications with insurance companies. The question asked and his answer reflecting this procedure are as follows:

"Q Now, what is the purpose of sending the SR21 under your financial responsibility law to the State Farm Insurance Company?

"A We use the negative approach to verification of insurance insofar as an accident is concerned. The individual completes the insurance form on the report. It is detached, forwarded to the insurance company with the transmittal sheet, and the company is to return the SR21 to the Department of Safety only when they are denying liability coverage for the individuals shown on the form." Lines 20–25, page 8, Lines 1–4, page 9

Thus the "negative approach" seems to be that the insured completes the insurance form on the face of the SR–21, leaving the back blank. Thereafter the commissioner sends a copy of this SR–21 to an insurance company, giving the name of the insured and the policy number with the request that a representative of the company sign a copy of the letter as a verification that the person or persons named in the letter are insured in accord with the Form SR–21 submitted. In this case State Farm received such transmittal letter, including Mr. Folts' policy, which was executed and returned to the commissioner. It would seem that the effect of this method would be the same as if the insurance company

had executed SR–21 form and it is assumed that this is the reason why State Farm admitted that SR–21 was actually executed.

At the pre-trial conference State Farm admitted that it had notice of the accident, had investigated the accident and was aware that Mrs. Erwin had a pending claim but never knew anything concerning the lawsuit in the state court until long after the judgment therein became final.

The nub of the contention made by Mrs. Erwin is that State Farm investigated the accident, knew of her claim, and executed Form SR–21, which resulted in the SR–21 becoming a contract setting up liability as if the policy were a certified policy under section 59–1221, T.C.A., whereby State Farm is bound to pay the judgment obtained by Mrs. Erwin by virtue of the provisions of section 59–1223(f) (1), T.C.A. Mrs. Erwin's counsel puts the question in the form of a statement this way: "We do not insist that this policy of insured's was a certified policy, but it is a policy that was offered by John M. Folts of his financial responsibility, and the defendant, by filing the SR 21, agreed that the plaintiff was covered and protected by this liability policy."

Mrs. Erwin principally relies upon the decisions of the courts in the State of Wisconsin. The decisional law in that state may well be put forth in a quotation from the brief filed by the attorneys for Mrs. Erwin:

"Thereafter the Supreme Court of Wisconsin, in the case of Schultz v. Hastings, reported in 92 N.W.2d 846 [5 Wis.2d 625], said as follows:

" 'Under date of July 19, 1956, Royal Indemnity executed an SR–21 form which was filed with the motor vehicle commissioner on July 20, 1956. In the SR–21 the company stated that Wisconsin Contractors, Inc. was the owner of the truck involved in the accident; that Bruce Runzler was the operator of the vehicle; that the company had issued an automo-

bile liability policy as defined in sec. 85.09, Stats.; that the policy was in effect on the date of the accident, and that it applied to both the owner and the operator.[1] (Safety Responsibility Law)

"The effect of filing an SR–21 has had our attention in several cases. Laughnan v. Griffiths, 271 Wis. 247, 73 N.W.(2d) 587; Behringer v. State Farm Mutual Automobile Insurance Co., 275 Wis. 586, 82 N.W. (2d) 915; Prisuda v. General Casualty Co., 1 Wis.(2d) 166, 83 N.W. (2d) 239. The rule is well summarized in the Behringer Case, supra as follows (p. 593):

" ' * * * We are therefore constrained to hold that, when a company has through an authorized officer, employee, or agent filed an SR–21 with the commissioner for the purpose of complying with the Safety Responsibility Law, the company cannot thereafter deny liability under its policy because of any act occuring, or fact existing, as of the time of such filing, which it then knew, or could have known through the exercise of due diligence. In other words, the legal effect of filing an SR–21 under such circumstances is to conclusively certify that under the facts then existing its policy insured both the named owner and the named operator of the particular vehicle described in the SR–21 as to which the same was filed.'

"Having certified to the motor vehicle commissioner that its insurance policy applied to and covered the operator, Bruce Runzler, the insurer cannot now deny coverage. We have held in these cases dealing with the filing of an SR–21 that the object of the Safety Responsibility Law (sec. 85.09(5) to (16) inclusive, Stats.) was to protect persons damaged or injured through the negligence of an operator of a motor vehicle. Because of the filing, both the operator and the insured avoided the penal-

ties provided by the statute. The insurer cannot now say that what it filed was a mere scrap of paper."

Both the Laughnan and Prisuda cases were remanded and appealed the second time. On the second appeal the Court maintained the same position as to the effect of filing an SR–21.

Other Wisconsin cases than those mentioned in the above opinion concerning the Safety Responsibility Law are: Perlick v. Country Mutual Casualty Co., 274 Wis. 558, 80 N.W.2d 921 (this case held that there was waiver of known impairments of the policy by the filing of the SR–21); Pulvermacher v. Sharp, 275 Wis. 371, 82 N.W.2d 163; Henthorn v. M.G.C. Corporation, 1 Wis.2d 180, 83 N.W.2d 759, 79 A.L.R.2d 142 (decided on authority of the Laughnan and Prisuda cases, supra).

It might be said that the Financial Responsibility Act in Wisconsin, so far as pertinent to this investigation, is much the same as the Tennessee Financial Responsibility Act.

■ It seems that the attorneys for Mrs. Erwin have a misconception concerning decisional law in Wisconsin. From the quotation in the above decision, it is quite clear that the Wisconsin cases held that where an insurance company filed an SR–21 form with the commissioner for the purpose of complying with the Safety Responsibility Law, the company cannot thereafter deny liability of its policy because of any act occurring or fact existing as of the time of such filing which it then knew or could have known through the exercise of due diligence. In other words, the legal effect of filing an SR–21 conclusively certifies that under the facts *then existing* the policy covers the owner and operator of the particular vehicle described in the SR–21. All the Wisconsin cases are based upon this principle of law, which is not at all applicable to the facts in the case under consideration.

It is plausible to assume that if an insurance company filed a paper with a safety department of a state setting out that an automotive vehicle involved in an accident was covered in accord with the state financial responsibility law, it would estop the insurance company from escaping liability for reasons existing at the time such report is made.

Mrs. Erwin relies upon the case of Simmons v. Civil Service Employees Insurance Company, 57 Cal.2d 381, 19 Cal.Rptr. 662, 369 P.2d 262. In this case the insurance company failed to respond to the Financial Responsibility Department and failed to state whether or not coverage existed. Actually the insurance company in the California case did not have a liability policy at all, but the effect of the decision was that the insurance company was estopped to claim that it did not have such policy. Evidently in California the failure to file an SR–21, or its equivalent, is the admission that the vehicle involved in an accident was covered by insurance as alleged by the insured in the accident report. This is another case of estoppel for the failure of the insurance company to disclose existing conditions which if it had, penalties would have been imposed upon the person reporting the accident.

Mrs. Erwin further relies upon a case decided by the Maryland Court of Appeals, styled Barrella et al. v. Stewart, 228 Md. 378, 179 A.2d 886. At the very start of the opinion in this case, it is quite clear that the ruling made therein has no application at all to the issues under consideration. The second sentence of the opinion in the Maryland case is, "In addition, we are asked to decide whether or not the defenses of lack of notice and absence of opportunity to defend are available to the defendant's insurer in a subsequent attachment case wherein plaintiffs sought to collect their judgments from the insurer under a policy issued to the defendant as proof of financial responsibility." The liability policy concerned in the Maryland case was issued after the first accident as proof of financial responsibility and came under the "absolute liability" provisions of the Maryland Motor Vehicle Financial Responsibility Act. Citizens Cas. Co. of

New York v. Allied Mut. Ins. Co., 217 Md. 494, 144 A.2d 73. In other words, this was a certified policy which did create absolute liability just the same as it would in Tennessee had the policy in question been a certified policy issued as proof of financial responsibility to comply with the second proviso of section 59–1204, T.C.A., as arranged by section 59–1221, T.C.A., whereby there would be absolute liability under section 59–1223(f), (1), T.C.A.

The next case relied upon by Mrs. Erwin is Hartford Acc. & Indem. Co. v. Come, 100 N.H. 177, 123 A.2d 267. In that case the Court held that the insurance company was liable because it failed to notify the commissioner that its policy would not cover the accident when it had the plain duty to disclose the lack of coverage. There is the same idea in this case as in the Wisconsin cases, to-wit, that an insurance company is estopped from claiming violation of the policy contract because it failed to perform a duty resting upon it at the time it was required to make a report to state authorities. The New Hampshire case is no precedent for the question now for determination.

State Farm contends that the submission of the SR–21 to the Department of Safety, at its request, was done only to verify the statements of the insured as made in the report of the accident and had no contractual connotations. To sustain this position, State Farm has cited a number of authorities. Blue Ridge Insurance Co. v. Haun, 197 Tenn. 527, 276 S.W.2d 711; Vanderbilt Law Review, Vol. 12, p. 1227; Turner v. Harris, 198 Tenn. 654, 281 S.W.2d 661; Barkley v. International Mut. Ins. Co., 227 S.C. 38, 86 S.E.2d 602; Va. Farm Bur. Mut. Ins. Co. v. Saccio, 204 Va. 769, 133 S.E.2d 268; Ky. Farm Bur. Mut. Ins. Co. v. Miles, Ky., 267 S.W.2d 928; Aetna Cas. & Surety Co. v. Simpson, 228 Ark. 157, 306 S.W.2d 117; Stollery Bros., Inc. v. Inter-Ins. Exchange of Chicago Motor Club, 15 Ill.App.2d 179, 145 N.E.2d 768; McCarthy v. Insurance Co. of Texas, Tex. Civ.App., 271 S.W.2d 836; De Vigil v. General Accident Fire & Life Assurance Co., D.C., 146 F.Supp. 729; M.F.A. Mut. Ins. Co. v. Mullin, D.C., 156 F.Supp 445; Hoosier Cas. Co. of Indianapolis, Ind. v. Fox, D.C., 102 F.Supp. 214; State Farm Mutual Automobile Ins. Co. v. Cooper, 4 Cir., 233 F.2d 500; Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 4 Cir., 177 F.2d 793.

It is unnecessary to go into a discussion of the authorities submitted by State Farm for the reason that no precedents have been cited, nor can be found, holding that under a financial responsibility act an insurance company having a policy of insurance in effect at the time of an accident becomes absolutely liable for a judgment in favor of an injured party by reason of the filing of an SR–21.

No court has gone further in holding insurance carriers liable under financial responsibility acts similar to the Tennessee Act than to rule that the filing of an SR–21 works an estoppel upon the insurance carrier from claiming that conditions existing at the time of the filing of the SR–21 invalidated the policy, which conditions were known to the insurance carrier, or should have been known by due diligence. No court has intimated an estoppel or waiver by reason of a material breach of a policy contract occurring after the filing of an SR–21.

There is no case in the State of Tennessee upon the question at issue here, but assuming that Tennessee would follow the Wisconsin cases and other cases cited by Mrs. Erwin, Mrs. Erwin must fail in her case because the material breach of the policy contract occurred long after the filing of the SR–21 and could not have possibly been known to State Farm by the exercise of diligence.

There is a feeling of safety in the expectation that the Tennessee courts will not extend the most favorable rule announced by other courts benefiting a third party beneficiary. It could well be that the Tennessee courts would decide that the filing of an SR–21 was only a verification of the existence of an insur-

ance policy at the time of the accident, as intimated by Mr. Lambert in his deposition.

From all the foregoing, it is believed that State Farm is not required to pay Mrs. Erwin the judgment she obtained in state court in a case where State Farm, through no fault of its own, had no opportunity to make a defense.

The motion for summary judgment made by Mrs. Erwin is denied.

The motion for summary judgment made by State Farm is granted.

Order accordingly.

## ON MOTION FOR NEW TRIAL

The plaintiff has interposed a motion for a new trial upon two grounds, which are in substance: (1) The Court was in error in failing to declare State Farm's policy equivalent to a certified policy by reason of its filing Tennessee Form SR–21; and (2) the Court was in error in failing to hold that by filing the Form SR–21 State Farm was continually estopped from evading liability for the amount of plaintiff's judgment in state court.

The same questions and the same argument are made on the motion for a new trial as were made upon the motions for summary judgment. The original opinion set out reasons and conclusions which represent the best efforts that can be made and they will abide.

However, a few pragmatic observations will be made in connection with the Tennessee Financial Responsibility Act.

■ The object of the Act is to protect the members of the public whereby compensation may be collected for injuries caused by the negligence of motorists operating cars without insurance or adequate insurance. The Act has nothing to do with citizens who carry adequate automobile liability insurance and such insurance is adequate if it has a minimum limit in the amount provided by section 59–1206, Tennessee Code Annotated. In fact the motorist, who has in effect adequate insurance at the time of an accident, is especially excepted from

the requirements of the Act. Section 59–1205(a), Tennessee Code Annotated.

If the owner or operator of an automobile who causes damage by a first accident has acted with care and prudence in securing an adequate liability insurance policy, the person who is damaged is protected on an equality with all others, thereby meeting the purpose of the Act.

The Act does require a valid adequate policy to be in effect at the time of the accident in order that a motorist be excepted therefrom. The filing of an SR–21 by an insurance company is conclusive evidence that the motorist was covered by an adequate policy at the time of the accident in accord with the requirements of the Act. The insurance company cannot thereafter set up reasons to claim that the policy was invalid at the time of the accident. When a motorist is exempt from the Act, the claim of the injured person proceeds in the ordinary manner without any directives by the Act. Likewise all parts of the policy contract remain in force as to all provisions effective prospectively to the time of the accident.

■ It was not the intention of the Act to place anyone on a preferred basis nor to penalize innocent persons, but was simply a means and manner of taking off Tennessee highways insolvent automobile drivers who did not carry adequate automobile liability insurance.

Mr. Folts did have an adequate policy with State Farm at the time of the accident. State Farm did file Tennessee Form SR–21 confirming that Mr. Folts did have such a policy. It makes no claim that the policy was not fully in effect and valid at the time of the acciden. Mr. Folts failed to notify State Farm of the suit filed by Mrs. Erwin in accord with the agreement made by him in the policy contract, thereby breaching the contract by this omission occurring long after the accident, which omission exonerated State Farm from liability.

The motion for a new trial is overruled.